UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FRANK AND SHELLY PALOMBARO, et al.,          Case No. 1:15-cv-792
      Plaintiffs,                              Dlott, J.
                                               Litkovitz, M.J.
    vs.

EMERY FEDERAL CREDIT UNION,                  **ORDER**
      Defendant.

This matter is before the Court on defendant's motion to compel responses to its class certification interrogatories (Doc. 273), plaintiffs' response in opposition (Doc. 276), and defendant's reply memorandum (Doc. 281).

**I. Background**

This putative class action against defendant Emery Federal Credit Union began as part of a larger action that was filed in Maryland state court on December 6, 2013 and removed to federal court on January 10, 2014. (Doc. 1). In December 2015, the District of Maryland transferred the claims against defendant to this Court, finding that those plaintiffs with claims against defendant were bound by a forum selection clause in the Emery Membership Agreement. (*See* Doc. 211 at 28-34).

On February 10, 2016, a third amended complaint was filed by the following named plaintiffs: Frank A. Palombaro, Jr., Shelly Palombaro, Steven A. Messina, Gary J. Ratcliff, Ann E. Ratcliff, Melinda Alvarado, David Alvarado, Carmelita B. Hackett, Kevin D. McAlpin, and Jennifer L. McAlpin. (Doc. 230 at 1). Plaintiffs assert a one-count claim that defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a) and (b), alleging that defendant received cash and/or sham marketing services for referrals of business to Genuine Title, LLC, a title services company. (*Id.* at ¶¶ 15-20, 85-101).

On August 25, 2016, defendant served the named plaintiffs with a second set of interrogatories concerning class certification issues. At issue are the following interrogatories served on each named plaintiff:

11. Describe in detail how you will establish that a particular "Referring Cash payment[]" (*see* TAC ¶¶ 20-23, 26-30) was made in exchange for the alleged referral of each putative class member to Genuine Title, LLC.

12. Describe in detail how you will establish that a particular fee was split between Genuine Title, LLC, and a "Referring Broker" or Emery for each putative class member, including how you will establish the total amount of the fee, the amount of the fee that was split, the date the split fee payment was made, to whom the split fee was paid, how the split fee was paid, and the process that you, your counsel, the Court, or a jury will use to ascertain the identity and amount of the fee you contend was split.

13. Describe in detail how you will ascertain the diligence undertaken by each putative class member to investigate their RESPA claim, both during the one year period after their loan with Emery closed and thereafter.

15. Describe in detail the putative class you seek to represent, including whether such class includes:

a. individuals who are currently aware of their alleged rights to prosecute a claim against Emery. *See* TAC ¶ 83 ("Most members of the Class are unaware of their rights to prosecute a claim against Emery Federal");

b. individuals who received an advertisement, solicitation, or communication from your counsel concerning this case or the Maryland Action;

c. individuals who were not referred to Genuine Title, LLC; or

d. individuals who were referred to Genuine Title, LLC by an Emery employee who did not receive cash, a split fee, a thing of value, or a kickback in any form in exchange for the referral.

16. Describe in detail your trial plan for this case including, but not limited to, your trial plan for the following:

a. issues that will be resolved as common issues for all putative class members and how these issues will be resolved;

      b.  issues that will be resolved on an individual basis for all putative class members and how these issues will be resolved;

      c.  the process for resolving class representative claims, including any limitations on the claims that class representatives can litigate;

      d.  the process for resolving absent class member claims including any limitations on the claims that absent class members can litigate;

      e.  how Plaintiffs' cases will be tried, including whether Plaintiffs' cases will be tried on a case-by-case basis, on a test case basis, in a bifurcated or multifurcated organization of issues, in a consolidated class format, or some other basis; and

      f.  your proposed jury instructions, including how the jury instructions will account for individual findings of damages and individual affirmative defenses.

(Doc. 273-1 at 5-7).

## II. Legal Standard

      Federal Rule of Civil Procedure 26 provides the following guidance concerning the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Demonstrating relevance is the burden of the party seeking discovery." *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (citations omitted). Where a party has propounded discovery but has not received adequate responses, that party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

      As to interrogatories, the Rules provide:

> An interrogatory may relate to any matter that may be inquired into under Rule
> 26(b). An interrogatory is not objectionable merely because it asks for an opinion
> or contention that relates to fact or the application of law to fact, but the court
> may order that the interrogatory need not be answered until designated discovery
> is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2).

## III. Resolution

### A. Waiver

#### 1. Relevant Facts

Named plaintiffs Frank and Shelly Palombaro served their objections and responses on September 27, 2016, which at that time were signed only by Frank Palombaro and counsel for plaintiffs.[1] A copy of the Palombaros' objections and responses with Shelly Palombaro's signature were served on September 28, 2016. (*See* Palombaro Answers to Interrogatories, Doc. 273-5, Exh. E; Declaration of Defense Counsel Michael Kieval, Doc. 273-6, Exh. F at ¶¶ 6-8).

The Alvarados served their objections and responses on September 28, 2016, which at that time were signed only by Melinda Alvarado and counsel for plaintiffs. (*See* Alvarado Answers to Interrogatories, Doc. 273-2, Exh. B; Kieval Declaration, Doc. 273-6, Exh. F at ¶ 9). As of November 28, 2016, the date of defendant's motion to compel, David Alvarado had not yet provided his signature. (*See* Doc. 273-2, Exh. B; Doc. 273-6, Exh. F at ¶¶ 10-11). Gary Ratcliff served his objections and responses on October 3, 2016. (*See* Gary Ratcliff Answers to Interrogatories, Doc. 273-3, Exh. C; Kieval Declaration, Doc. 273-6, Exh. F at ¶ 12). The McAlpins served their objections and responses on October 4, 2016. (*See* McAlpin Answers to Interrogatories, Doc. 273-4, Exh. D; Kieval Declaration, Doc. 273-6, Exh. F at ¶ 14). The objections and responses submitted by the Alvarados, Gary Ratcliff, and the McAlpins are

---

[1] The response to an interrogatory under Rule 33 is either: (1) an answer in writing and signed under oath by the party to whom it is directed; or (2) an objection signed by the attorney who made the objection. See Fed. R. Civ. P. 33(b)(1), (3), (5).

4

substantively identical to those submitted by the Palombaros. (*See* Docs. 273-2 through 273-5, Exhs. B through E).

Defense counsel attests that as of November 28, 2016, named plaintiffs Messina, Hackett, and Ann Ratcliff had not served objections or responses. (Kieval Declaration, Doc. 273-6, Exh. F at ¶¶ 13, 15-16). Defense counsel further attests: "On September 27, 2016, Plaintiffs' counsel served Emery with Plaintiffs Frank and Shelly Palombaro's objections to the Certification Interrogatories (and Mr. Palombaro's signed responses), and stated that 'Plaintiffs McAlpin, Alvarado, Gary Ratcliff, and Shelly Palombaro are in the process of finalizing their Answers to Interrogatories, and we will provide them promptly upon their receipt.'" (*Id.* at ¶ 17). On December 19, 2016, the parties stipulated to the dismissal of Hackett and Ann Ratcliff as named plaintiffs. (Doc. 277). On December 21, 2016, plaintiffs moved to substitute Ray and Barbara Roudebush for named plaintiff Messina. (Doc. 280).

### 2. The Parties' Arguments

Defendant argues that plaintiffs Alvarado, Ratcliff, McAlpin, Messina, and Hackett waived all objections to the interrogatories by failing to serve timely objections to them. (Doc. 273 at 10-11).[2] Defendant further contends that these named plaintiffs have failed to show good cause to excuse their delayed objections. (Doc. 281 at 2-4).

Plaintiffs argue that the delay in serving discovery responses should be excused because plaintiffs made good faith attempts at compliance and all active plaintiffs except Mr. Alvarado provided their responses timely or within one week. (Doc. 276 at 18-19). Further, plaintiffs contend that the delay was minor and the delayed responses were "nearly identical" to those that were timely. (*Id.* at 19). As to Mr. Alvarado, plaintiffs argue that he has good cause for his delay because he "is currently deployed in Iraq and is without a scanner to be able to provide his

---

[2] Page citations refer to the page numbers provided by CM/ECF.

answers or signature to counsel." (*Id.* at 19-20). As to Mr. Messina, plaintiffs assert that they seek to substitute Ray and Barbara Roudebush as named plaintiffs because Mr. Messina's "declining health prevents his service as class representative." (*Id.* at 20).

### 3. Analysis

Defendant's argument that all named plaintiffs except the Palombaros have waived any objections to the interrogatories is not well-taken. The discovery rules require a responding party to respond to discovery requests within 30 days of being served with the requests. Fed. R. Civ. P. 33(b)(2). Rule 33 provides that any ground for objecting to an interrogatory "not stated in a timely objection is waived unless the court, for good cause shown, excuses the failure." Fed. R. Civ. P. 33(b)(4). The question of waiver is left to the sound discretion of the Court. *Cooey v. Strickland*, 269 F.R.D. 643, 648 (S.D. Ohio 2010).

While the failure to object to interrogatories within 30 days generally results in waiver, this is not a bright-line rule. Instead, "courts will examine the circumstances of each case, including the reason for tardy compliance, prejudice to the opposing party, and the facial propriety of the discovery requests to determine whether enforcement of the waiver is equitable." *Napier v. Cty. of Washtenaw*, No. 11-cv-13057, 2013 WL 1395870, at *4 (E.D. Mich. Apr. 5, 2013) (quoting *Carfagno v. Jackson Nat'l Life Ins. Co.*, No. 5:99-cv-118, 2001 WL 34059032, at *1 (W.D. Mich. Feb. 13, 2001)). In this case, the Court exercises its discretion and excuses the untimeliness of plaintiffs' objections.

The delay in serving plaintiffs' objections was minimal. The Alvarados' objections were filed one day after the deadline.[3] Mr. Ratcliff and the McAlpins' objections were served within one week or less of the deadline. Such delays "constitute minor technical violations of the

---

[3] While Mr. Alvarado has not signed the interrogatory responses, the objections signed by counsel on his behalf were filed on September 28, 2016. *See* Fed. R. Civ. P. 33(b)(5).

discovery rules" and do not justify the waiver of the objections in this case. *Raub v. Moon Lake Prop. Owners Ass'n*, No. 15-cv-13480, 2016 WL 6275392, at *3 (E.D. Mich. Oct. 27, 2016) (finding magistrate judge did not abuse her discretion in excusing four-day delay in responding to discovery requests). *See also United States ex rel. Burroughs v. Denardi Corp.*, 167 F.R.D. 680, 687 (S.D. Cal. 1996) (finding a six-day delay in responding to discovery requests was not unfair and thus did not equate to a waiver). Further, plaintiffs advised defendant before the deadline expired that they were finalizing their answers to defendant's interrogatories and would provide them to defendants "promptly upon their receipt." (*See* Kieval Declaration, Doc. 273-6, Exh. F at ¶ 17). Thus, defendant was well aware that the interrogatory responses were forthcoming and there is no evidence that defendant objected to or was prejudiced by this slight delay. *See Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver. In contrast, evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver."). Moreover, the Palombaros timely filed their objections, which were identical in substance to the objections filed by the other plaintiffs. As a result, defendant was on notice of the nature of plaintiffs' objections and cannot now claim that it was unfairly surprised by the nearly identical objections made by the Alvarados, Mr. Ratcliff, and the McAlpins the following week. *See Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202, Cook Cty., Ill. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 28 (N.D. Ill. 1984) (holding that any finding of waiver as to defendants who served late responses would be "an uncalled-for punitive measure" where their responses were served "well before plaintiffs filed their motion to compel" and their legal arguments were "essentially the same" as those defendants who served timely responses). Finally, plaintiffs' objections raise

serious issues implicating the attorney work product doctrine in answering defendant's interrogatories. Under these circumstances, it would be inequitable to waive plaintiffs' objections given the brief delay in serving the objections and in the absence of any showing of prejudice to defendant by such brief delay. Based on the foregoing, the Court declines to find that the Alvarados, Mr. Ratcliff, and the McAlpins waived their objections to the interrogatories.

As to Ms. Hackett and Ms. Ratcliff, because the parties have stipulated to their dismissal as named plaintiffs, defendant's waiver argument based on their failure to respond is moot. This leaves only Mr. Messina and his failure to respond. While plaintiffs have moved to substitute Ray and Barbara Roudebush for Mr. Messina, that motion is not yet ripe for the Court's review. (*See* Doc. 280). Thus, the Court defers any decision as to whether Mr. Messina has waived any objections to the interrogatories and/or should be dismissed from this action. Accordingly, the Court will fully consider plaintiffs' objections in ruling on the motion to compel.

### B. Interrogatories 11, 12, and 13

#### *1. Relevant Facts*

Interrogatory 11 states:

Describe in detail *how you will establish* that a particular "Referring Cash payment[]" (*see* TAC ¶¶ 20-23, 26-30) was made in exchange for the alleged referral of each putative class member to Genuine Title, LLC.

(Doc. 273-1 at 5) (emphasis added).

Interrogatory 12 states:

Describe in detail *how you will establish* that a particular fee was split between Genuine Title, LLC, and a "Referring Broker" or Emery for each putative class member, including *how you will establish* the total amount of the fee, the amount of the fee that was split, the date the split fee payment was made, to whom the split fee was paid, how the split fee was paid, and *the process that* you, *your counsel*, the Court, or a jury *will use to ascertain* the identity and amount of the fee you contend was split.

(Doc. 273-1 at 5-6) (emphasis added).

Plaintiffs objected that Interrogatories 11 and 12 sought to invade attorney-client privilege and the work-product doctrine by seeking not facts, but counsel's trial strategy, trial plan for witnesses and documents, and mental impressions. (*See, e.g.*, Doc. 273-2 at 3).[4] Without waiving those objections, plaintiffs referred defendant to "the affidavit and deposition testimony of Jay Zukerberg, Brandon Glickstein, Adam Mandleberg, Gary Klopp, and Todd Tabor." (*Id.* at 3-4).

Interrogatory 13 states:

> Describe in detail *how you will ascertain* the diligence undertaken by each putative class member to investigate their RESPA claim, both during the one year period after their loan with Emery closed and thereafter.

(Doc. 273-1 at 6) (emphasis added). Plaintiffs offered the same objections, but also objected "to the false premise or assumption that one needs to ascertain the specific diligence undertaken by each and every class member." (Doc. 273-2 at 4-5). Plaintiffs further objected that because they are not lawyers, any responses to the interrogatory would necessarily invade the attorney-client privilege. (*Id.* at 5).

### 2. The Parties' Arguments

Defendant contends that questions about the alleged referrals and split fees are appropriate because "[w]ithout evidence connecting Emery to the alleged RESPA violations, Plaintiffs cannot establish standing on a class-wide basis." (Doc. 273 at 19). Defendant argues that instead of responding by citing to the affidavits and depositions of certain witnesses in their entirety, "Plaintiffs should be compelled to answer Interrogatory Nos. 11 and 12 by addressing the narrow topics actually requested: how each alleged 'referring cash payment' (i.e., kickback) and each 'split fee' will be tied to each particular plaintiff in the putative class." (*Id.* at 20). As

---

[4] Page citations refer to the page numbers provided by CM/ECF.

to Interrogatory 13, defendant contends that a question about the diligence of each putative class member is appropriate because defendant "has a due process right to raise limitation defenses as to each Plaintiff and proposed class member." (*Id.* at 13).

Plaintiffs argue that these interrogatories do not seek facts but protected attorney work-product concerning how they "will put these facts together in support of [their] motion for class certification." (Doc. 276 at 13). Plaintiffs argue that "Emery's interrogatories are deposition by written question served on Plaintiffs' counsel for the purpose of learning Plaintiffs' counsel's 'mental impressions, opinions, conclusions, judgments or legal theories.'" (*Id.* at 15-16).

In reply, defendant contends that its interrogatories do not violate the work-product doctrine because they properly seek to explore the manageability of the putative class. (Doc. 281 at 4-7). Defendant argues that its interrogatories are proper even if they do not seek facts because interrogatories may be used to obtain a party's admissions and contentions. (*See id.* at 4-5). Citing Fed. R. Civ. P. 26(b)(3), defendant also asserts that these interrogatories do not seek attorney work product because they do not request any documents or materials prepared in anticipation of litigation. (*Id.* at 6).

### 3. *Analysis*

Plaintiffs' objections to these interrogatories under the work-product doctrine are well-taken. An attorney's work product is reflected "in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. . . ." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Work product is protected to ensure that a lawyer can "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to allow the attorney to "assemble

information, sift what he considers to be relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Id.* at 510-11.

Fed. R. Civ. P. 26(b)(3) provides work-product protection to documents and tangible things prepared in anticipation of litigation or for trial by or for an attorney. However, the contours of the work-product doctrine are broader than the protection provided by Rule 26(b)(3). As the Sixth Circuit has explained, the work-product doctrine is not limited only to documents and tangible things because "disclosure of the opinions or mental processes of counsel may occur when nontangible work product is sought through depositions, interrogatories, and requests for admission." *United States v. One Tract of Real Prop. Together with All Bldgs., Improvements, Appurtenances & Fixtures*, 95 F.3d 422, 428 n.10 (6th Cir. 1996) (citing *Hickman*, 329 U.S. at 510-11; 4 James W. Moore, Moore's Fed. Practice ¶ 26.15 (2d ed. 1996)). Thus, "[w]hen applying the work product privilege to such nontangible information, the principles enunciated in *Hickman* apply, as opposed to Rule 26(b)(3) . . . , which applies only to 'documents and tangible things.'" *Id.*

Here, Interrogatories 11, 12 and 13 do not seek the facts giving rise to plaintiffs' allegations of kickbacks and split fees, nor do they seek facts concerning the diligence of putative class members in pursuing their claims. Instead, Interrogatories 11 and 12 ask plaintiffs to describe *how* they plan to "establish" that alleged referral payments and fee-splitting payments will be tied to each putative class member for purposes of the anticipated class certification motion. Interrogatory 13 asks plaintiffs to describe *how* they plan to "ascertain" the diligence taken by each putative class member to investigate their RESPA claims. (*See* Doc. 273-1 at 5-6). The questions do not seek underlying facts that would shed light on the class certification issues, but rather plaintiffs' legal strategy. Interrogatories 11, 12 and 13 seek responses that are

intertwined with the mental impressions, conclusions, opinions, or legal theories of plaintiffs' attorneys as to *how* they will apply the underlying facts to prove the Rule 23 elements in their anticipated class certification motion. Although the factual information underlying the alleged kickbacks, split fees, and diligence used by putative class members is discoverable, *how* plaintiffs and their attorneys will use this factual information to establish that a particular alleged kickback was made in exchange for the referral of each putative class member; to establish that a particular fee was split between Genuine Title and defendant; and to ascertain the diligence of each putative class member is not.[5] This information constitutes protected work product and is shielded from discovery. *See Hickman*, 329 U.S. at 510-11.

　　Defendant's arguments to the contrary are unavailing. First, while defendant is correct that interrogatories may be used to obtain a party's admissions and contentions, these interrogatories do not seek such information. Unlike the requests for admission in *Tustin v. Motorists Mut. Ins. Co.*, No. 5:08-cv-111, 2009 WL 3335060 (N.D. W. Va. Oct. 14, 2009), which defendant cites in its reply memorandum, these interrogatories do not ask plaintiffs to admit or deny specific statements.

　　Further, these interrogatories are not contention interrogatories. Contention interrogatories "are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims." *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998). Such interrogatories "ask a party to state the facts upon which it bases a claim or defense" or ask "for an opinion or contention that relates to fact or the application of law to fact." *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-cv-507, 2015 WL 7571905, at *5 (W.D. Ky. Nov. 24, 2015)

---

[5] While *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750 (2016), cited by defendant (Doc. 273 at 13), sets forth the appropriate standard for equitable tolling, that case was not a class action and does not suggest that Interrogatory 13 appropriately seeks non-attorney work product information.

(quoting *Alexander v. Hartford Life & Accident Ins. Co.*, No. 3:07-cv-1486, 2008 WL 906786, at

*4 (N.D. Tex. Apr. 3, 2008); Fed. R. Civ. P. 33(a)(2)). As propounded, these interrogatories do

not ask plaintiffs to "state the facts upon which [they] base[]" their claims, nor do they seek "an

opinion or contention that relates to fact or the application of law to fact." *See id.* Instead, these

interrogatories seek information concerning the process by which plaintiffs "will establish" their

kickback and split fee allegations, the "process" that their counsel "will use to ascertain the

identity and amount" of the alleged split fees, and the process counsel will use to "ascertain" the

diligence of putative class members. (*See* Doc. 273-1 at 5-6). Thus, such interrogatories do not

seek the factual basis of plaintiffs' claims but information concerning counsel's legal strategy

and mental impressions that is protected work product. *See Hickman*, 329 U.S. at 510-11.

Finally, defendant's contention that work-product protection is limited to documents and

tangible things is not an accurate statement of the law. (*See* Doc. 281 at 6). Instead, an

attorney's work product is reflected "in interviews, statements, memoranda, correspondence,

briefs, *mental impressions, personal beliefs, and countless other tangible and intangible ways*."

*Hickman*, 329 U.S. at 511 (emphasis added). The Sixth Circuit has explained that the work-

product doctrine is implicated when "disclosure of the opinions or mental processes of

counsel . . . is sought through depositions, *interrogatories*, and requests for admission." *One

Tract of Real Prop.*, 95 F.3d at 428 n.10 (emphasis added). On their face, the disclosure of

counsel's opinions and mental processes is precisely what these interrogatories seek and, thus,

the work-product doctrine applies.

Based on the foregoing, the motion to compel is **DENIED** as to Interrogatories 11, 12,

and 13.

### C. Interrogatory 15

#### *1. Relevant Facts*

In this interrogatory, defendant asks each named plaintiff to describe "the putative class you seek to represent," including whether the putative class includes individuals who: (a) are currently aware of their alleged rights to prosecute a claim against defendant; (b) received a communication from plaintiffs' counsel; (c) were not referred to Genuine Title; or (d) were referred to Genuine Title by an employee of defendant who did not receive a kickback or split fee in exchange for the referral. (Doc. 273-1 at 6). Without waiving attorney-client and work-product objections, plaintiffs responded that they "will provide to Emery the class definition at the time Plaintiffs file for class certification." (*See, e.g.*, Doc. 273-2 at 6). Plaintiffs further responded that "since Emery actively concealed the fraud alleged in this case, [they were] unaware and can assume all other class members were unaware, of the possibility of a claim until notified by Plaintiffs' counsel during its investigation." (*Id.*). Additionally, plaintiffs responded that they "anticipate that all of the Emery borrowers . . . were unaware of the kickback for referral of their title work, unless they received and read the material sent by [plaintiffs' counsel]." (*Id.*).

#### *2. The Parties' Arguments*

Defendant argues that a question about the nature of the putative class is appropriate for pre-certification discovery and, thus, "Plaintiffs should be compelled to explain the contours—including those that are problematic for Plaintiffs—of the class they seek to have certified." (Doc. 273 at 12-13).

Plaintiffs contend that this interrogatory seeks not facts, but protected attorney work product concerning how they "will put these facts together in support of [their] motion for class

certification." (Doc. 276 at 13). Plaintiffs argue that "Emery's interrogatories are deposition by written question served on Plaintiffs' counsel for the purpose of learning Plaintiffs' counsel's 'mental impressions, opinions, conclusions, judgments or legal theories.'" (*Id.* at 15-16).

In reply, defendant argues that "*Hickman* does not stand for the proposition that a class representative may shield from disclosure important contentions related to . . . the contours of the class they seek to represent." (Doc. 281 at 5).

### 3. *Analysis*

Plaintiffs' objections to this interrogatory are not well-taken. This interrogatory seeks factual information concerning the contours of the class the named plaintiffs seek to represent, i.e., whether the putative class includes individuals who: (1) are aware of their rights to prosecute a claim against defendant; (2) received a communication from plaintiffs' counsel; (3) were not referred to Genuine Title; or (4) were referred to Genuine Title by an Emery employee who did not receive a kickback or split fee. (*See* Doc. 273-1 at 6). Unlike Interrogatories 11, 12, and 13, this interrogatory does not seek privileged information concerning counsel's legal strategy or mental impressions. Further, plaintiffs have not explained why the attorney-client privilege would shield them from answering. Thus, plaintiffs must respond to this interrogatory.

In spite of their objections, plaintiffs did provide a partial response to this interrogatory, stating that "since Emery actively concealed the fraud alleged in this case, [they were] unaware and can assume all other class members were unaware of the possibility of a claim until notified by Plaintiffs' counsel during its investigation." (*See, e.g.*, Doc. 273-2 at 6). This answer is responsive to subparts A and B of the interrogatory. (*See* Doc. 273-1 at 6). However, this answer does not respond to the question of whether the named plaintiffs seek to represent a class that will include class members who were not referred to Genuine Title or who were referred to

Genuine Title by an Emery employee who did not receive a kickback or split fee.  Accordingly,

the motion is **GRANTED IN PART** as to Interrogatory 15, and plaintiffs must amend their

responses to provide answers to subparts C and D.

###### D. Interrogatory 16

*1. Relevant Facts*

This interrogatory asks plaintiffs to describe their trial plan.  (*See* Doc. 273-1 at 6-7).

Plaintiffs objected that it "is wholly objectionable and improper," because it "improperly seeks

legal theory, jury instructions and trial plan." (*See, e.g.*, Doc. 273-2 at 7).  Plaintiffs also raised

objections under the attorney-client privilege and work-product doctrine.  (*Id.*).  Plaintiffs

responded that their "counsel will draft and submit jury instructions and any other required

filings on [their] behalf when required to do so by the Court and within its deadlines." (*Id.*).

*2. The Parties' Arguments*

Defendant argues that "[t]rial plans are consistently recommended in Rule 23's

committee notes and in class action treatises, and are often required by federal courts across the

country." (Doc. 273 at 14-19).

Plaintiffs respond that defendant's request for a trial plan is improper because the Court

has not ordered one and one is not required.  (Doc. 276 at 16).  Plaintiffs argue that the cases on

which defendant relies "involved nationwide classes and claims arising under many different

state's laws," but plaintiffs' claims in this case "arise solely under the federal RESPA statute and

do not involve state law." (*Id.* at 16-17).  Further, plaintiffs argue that unlike the antitrust cases

on which defendant relies—which can involve millions of consumers and complex issues of

damages—"the putative class in this case is not likely to exceed 5,000 . . . and [will] have a

straightforward statutorily defined calculation of damages drawn from specific lines on a

borrower's standardized HUD 1." (*Id.* at 17). Plaintiffs also assert that the joint discovery plan does not include a trial plan requirement and defendant never raised the issue of a trial plan when the joint discovery plan was being formed. (*Id.* at 18).

In reply, defendant contends that plaintiffs should be compelled to provide a trial plan because "the issues in this case are quite complex, requiring plaintiff-by-plaintiff determination of multiple issues, including the facts that each plaintiff must establish to overcome RESPA's one-year statute of limitations, the elements that each plaintiff must establish for his or her RESPA claims . . . , and the facts that each plaintiff must establish to show that his or her loan is covered by RESPA in the first place." (Doc. 281 at 7).

### *3. Analysis*

There is no requirement that plaintiffs must submit a formal trial plan for purposes of class certification. *See Peterson v. Cleveland Inst. of Art*, No. 1:08-cv-1217, 2011 WL 1297097, at *11 (N.D. Ohio Mar. 31, 2011) (finding that the filing of a formal trial plan is "not legally required"); *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010) ("Nothing in Rule 23 requires Plaintiff to submit a formal trial plan along with her motion for class certification."); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 624 (C.D. Cal. 2009) (same). *See also Holman v. Experian Info. Sols., Inc.*, No. 11-cv-180, 2012 WL 1496203, at *15 (N.D. Cal. Apr. 27, 2012) (certifying class even though plaintiffs did not propose a trial plan because the claims of all class members were based on federal law, not differing state laws).

Further, as plaintiffs correctly note, the joint discovery plan does not include a trial plan requirement. (*See* Doc. 231). Moreover, defendant did not raise this as a concern at the preliminary pretrial conference. (*See* Doc. 236). Additionally, while defendant has marshalled various cases in which courts extolled the usefulness of trial plans generally or denied class

certification based on a failure to provide a workable trial plan with the motion for class certification, defendant has not identified any case in which a court compelled disclosure of a trial plan during pre-certification discovery. (*See* Doc. 273 at 14-19).

Based on the foregoing, the motion to compel is **DENIED** as to Interrogatory 16. However, this ruling does not relieve plaintiffs of their burden of showing in their motion for class certification the manageability of the proposed class and/or the superiority of class litigation in this matter, whether by submission of a trial plan or some other means.

**IV.  Conclusion**

Consistent with the foregoing, the motion to compel (Doc. 273) is **GRANTED IN PART** as to Interrogatory 15 and **DENIED** in all other respects.  Plaintiffs are **ORDERED** to provide defendant with their amended responses to Interrogatory 15 subparts C and D within **fourteen (14) days** of the date of this Order.

**IT IS SO ORDERED.**

Date: _1/17/2017_

Karen L. Litkovitz
United States Magistrate Judge