# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### CINCINNATI DIVISION

|  |  |  |
|---|---|---|
| FRANK A. AND SHELLY PALOMBARO, JR., *et al.*, | : | CASE NO. 1:15-cv-792-SJD |
|  | : |  |
| Plaintiffs, | : | Judge Susan J. Dlott |
|  | : | Magistrate Judge Karen L. Litkovitz |
| v. | : |  |
|  | : |  |
| EMERY FEDERAL CREDIT UNION, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

## EMERY FEDERAL CREDIT UNION'S OPPOSITION TO
## PLAINTIFFS' SECOND AMENDED MOTION FOR CLASS CERTIFICATION

Carolyn A. Taggart   (0027107)
PORTER WRIGHT MORRIS & ARTHUR LLP
250 East Fifth Street, Suite 2200
Cincinnati, Ohio  45202-5118
(513) 369-4231 (telephone)
(513) 421-0991 (facsimile)
ctaggart@porterwright.com

David M. Souders (*pro hac vice*)
Michael Y. Kieval (*pro hac vice*)
Jeffrey P. Blackwood (*pro hac vice*)
WEINER BRODSKY KIDER PC
1300 19th Street, NW, Fifth Floor
Washington, DC 20036
(202) 628-2000 (telephone)
(202) 628-2011 (facsimile)
souders@thewbkfirm.com
kieval@thewbkfirm.com
blackwood@thewbkfirm.com

*Counsel for Defendant*
*Emery Federal Credit Union*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ........................................................................... vi

INTRODUCTION...............................................................................................1

LEGAL STANDARD .........................................................................................2

ARGUMENT......................................................................................................3

    **I.**       **Plaintiffs' Time Barred Class Cannot Be Certified** ...........................3

        **A. Each Class Member's Equitable Tolling Claim Requires Individual Inquiry** ........................................................................................4

Plaintiffs and the putative class are barred by RESPA's one-year statute of limitations. 12 U.S.C. § 2614. The time-barred putative class cannot be certified because whether equitable tolling applies to RESPA claims must be decided on a "case-by-case basis." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424 (6th Cir. 2009). This individualized inquiry will require the Court to separately analyze each class member's purported diligence in pursuing their claims, and the extraordinary circumstances they allegedly faced that prevented them from doing so. *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 756 (2016). Because no common evidence can be used to satisfy the two elements that must be proven to be eligible for equitable tolling—diligence and extraordinary circumstances—Rule 23(b)(3) predominance is not met. *See Rikos v. P&G*, 799 F.3d 497, 521 (6th Cir. 2015).

        **B. The Facts Concerning Named Plaintiffs' Alleged Diligence Vary** ..............5

Plaintiffs admit they did nothing to pursue their claims until contacted by counsel. Yet Plaintiffs appear to concede that, at a minimum, diligence requires "full participation in the loan process." Mot. 24, Doc. 325, PageID 9570. But even if "full participation in the loan process" was the minimum standard to be applied, the evidence shows that the Plaintiffs' participation varied, with some barely participating at all. At bottom, a class cannot be certified because the "plaintiffs did absolutely nothing to investigate their potential claims" during the loan process, or "between the time they closed on their homes . . . and the time that they were contacted by counsel." *Riddle v. Bank of America Corp.*, 588 F. App'x 127 (3d Cir. 2014).

        **C. Individual Inquiry Is Required to Determine Whether Putative Class Members Are Eligible for Equitable Tolling** ...............................................9

This case cannot be tried on a class-wide basis because different evidence would be used for each putative class member to determine whether each was eligible for equitable tolling. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (plaintiffs must establish that class issues are subject to generalized proof). Plaintiffs have offered no means to analyze the diligence or extraordinary circumstances of the borrowers on the nearly 5,000 loans in the class they seek to certify. Whether a putative class member "fully participated in the loan process"

would require fact-intensive inquiry that would predominate over common questions. Moreover, the evidence already shows that the putative class members received differing notice with respect to Genuine Title, so the diligence and extraordinary circumstances analysis will be unique to each borrower.

II.     **Plaintiffs' Class Definition Requires Individual Inquiry** ................................11

A. **Every Loan Must Be Analyzed to Determine Whether RESPA Applies**..11

Plaintiffs' class definition includes every Emery borrower that used Genuine Title for settlement services from 2009 to 2014, improperly lumping together some 5,000 loans. Plaintiffs incorrectly assert that all of these loans are subject to RESPA because they are "federally related." But RESPA *does not apply* to loans made "primarily for business, commercial, or agricultural purposes," or "on property of 25 acres or more." 12 U.S.C. § 2606(a)(1); 24 C.F.R. § 3500.5(b). Thus, a threshold issue that must be determined for each member of the putative class is whether RESPA even applies to their transaction. *Pettrey v. Enter. Title Agency, Inc.,* 241 F.R.D. 268, 284 (N.D. Ohio 2006). The evidence shows that hundreds of loans are not subject to RESPA on their face, and almost all of the rest would have to be analyzed under the "primary purpose" test. *Hinchliffe v. Option One Mortg. Corp.*, No. 08-2094, 2009 WL 1708007, at *3-4 (E.D. Pa. June 16, 2009).

B. **RESPA Liability Must be Determined on a Loan-by-Loan Basis**.............17

There is no common evidence that could be used to establish the two primary elements of a RESPA kickback claim: 1) whether there was a referral; and 2) whether a thing of value was given in exchange for that particular referral. *See* 12 U.S.C. § 2607(a). "RESPA . . . authorizes suits only by individuals who receive a loan that is accompanied by an unlawful referral, which is plainly an individualized injury." *Carter v. Welles-Bowen Realty, Inc*., 553 F.3d 979, 989 (6th Cir. 2009). Thus, an individualized inquiry is required to determine whether each putative class member was referred to Genuine Title, and whether a thing of value was exchanged.

i   *Every Transaction Must be Scrutinized for a Referral under § 8(a)*.........18

RESPA liability cannot be established by lumping together thousands of loan transactions in collective fashion. The evidence shows that not all borrowers were referred to Genuine Title. *See, e.g.*, Mandelberg Dep. 191:13-21, Doc. 304-1, PageID 7194. Plaintiffs' class is thus overbroad because RESPA only prohibits "a fee in exchange for a *referral.*" *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 724 (6th Cir. 2013) (emphasis added). Courts deny certification of RESPA classes because of the individual inquiry required to determine if a referral was made for each member of the putative class. *See, e.g.*, *Wyman v. Park View FSB*, No. 1:09-CV-1851, 2011 U.S. Dist. LEXIS 124500, at *5-6 (N.D. Ohio June 14, 2011) (Ex. 22).

ii.  *Every Transaction Must Be Scrutinized for a Thing of Value under 8(a)*.20

Plaintiffs must show the payment of a "fee, kickback, or thing of value" for each loan in the putative class. *See* 12 U.S.C. § 2607(a). But the evidence shows that only about half of Genuine Title's business came from referral agreements. Zukerberg Dep. 17:1-11, 36:1-5, Doc. 300, PageID 6208, 6213. Further, for loans in 15 states Genuine Title did not pay anything to the referrer, even if there *was* a referral agreement ("workshare" loans). *Id.* at 52:15-20, PageID 6217. The referral agreements—where they existed—also differed from team to team, and Plaintiffs claim to have evidence of wrongdoing for only 13 of the 40 Emery teams that used

Genuine Title, Mot. at 10-11, Doc. 325, PageID 9556-57, yet seek a class which covers every Emery loan regardless of which team it came from.

iii.  *Section 8(b) Applies to Few Teams, and Requires Scrutinizing Each Transaction for a Particular Fee that Was Split* .......................................21

Plaintiffs do not address or differentiate the Section 8(a) (kickback) or Section 8(b) (fee-splitting) claims, which is improper because "each subsection reaches conduct that the other does not." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 636 (2012). Further, the evidence shows that only a small number of borrowers could possibly have a fee-splitting claim, and for those that might, individual inquiry will be required to scrutinize each transaction under the unique elements of Section 8(b).

iv.  *Section 8(c)(2) Requires an Individual Inquiry of all Klopp Loans* ..........22

Gary Klopp, the Emery team manager whose team had the most loans closed by Genuine Title, testified that he provided services to Genuine Title in exchange for the payments he received. Klopp Dep. 124:13-21, 128:7-18, Doc. 307, PageID 7876-77. Thus, individual inquiry into each of the Klopp loans will be necessary to determine whether the payments he received fall under RESPA's "safe harbor." *See* 12 U.S.C. 2607(c)(2). Because Plaintiffs will have to prove on a loan-by-loan basis that Klopp did not perform "compensable services," certification should be denied. *See O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 742 (5th Cir. 2003) (denying certification because "RESPA § 8 liability is established by making individual comparisons of compensation to actual services, not by presuming fire where there is smoke").

**C.  Genuine Title Interacted with Emery Teams in Different Ways** ..............24

i.  *Teams Had Different Arrangements and Histories with Genuine Title* ........................................................................................................24

Predominance is destroyed because Plaintiffs have not shown that Genuine Title had a referral agreement with every loan officer, or even with every Emery team manager who had loans closed by Genuine Title, nor that each agreement was the same. Individualized testimony and evidence as to all of the 40 Emery teams which had loans closed by Genuine Title would be required to determine whether they had an agreement with Genuine Title, and if so, what that agreement was.

ii.  *Only the Ellis and Klopp Teams Are Represented by Named Plaintiffs* ....25

Plaintiffs' Motion admits that the putative class representatives received their loans from only two of the thirteen Emery teams that Plaintiffs allege were making improper referrals to Genuine Title. Mot. at 15-16, Doc. 325, PageID 9561-62. There are no class representatives who can address the unique circumstances of the other eleven teams, to say nothing of the 27 teams for which Plaintiffs admit they have no evidence of wrongdoing but still seek to include in the class. Six of the seven named Plaintiffs—the Palombaros, Alvarados, and McAlpins—received their loans from Gary Klopp's team, and one—Gary Ratcliff—received his loan from Adam Ellis's team. Mot. at 15-16, Doc. 325, PageID 9561-62.

**D.  The Class Definition Is Overbroad**.............................................................25

Plaintiffs' class definition—which includes all loans "originated or brokered by Emery for which Genuine Title provided a settlement service. . . between January 1, 2009, and December 31,

2014"—is overbroad. Emery Federal Credit Union did not have a national lending platform prior to April 2011, Plaintiffs have submitted no evidence of any payment to an Emery team manager after May 2013, and Genuine Title was ordered into receivership in August 2014. *See* Doc. 325-5, PageID: 9611.

**III.    Plaintiffs Failed their Burden to Show the Prerequisites of Rule 23 Have Been Met** .......................................................................................................26

**A.  The Putative Class is Not Manageable** ..........................................................26

"[T]he class determination should be predicated on evidence the parties present concerning the *maintainability* of the class action." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (emphasis added).   Yet Plaintiffs failed to demonstrate a class action involving 5,000 individual loan transactions was manageable or superior under Rule 23(b)(3).

*i.   Emery Has a Due Process Right to Raise All Available Defenses* ............26

Rule 23's manageability test is only satisfied if trial of the case as a class action can be accomplished "without sacrificing procedural fairness." *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Here, there is no contesting that were Plaintiffs to bring their claims individually, Emery would have the right to raise the statute of limitations defense, and to challenge RESPA coverage, as to each plaintiff. *Lindsey v. Normet*, 405 U.S. 56, 66 (1972). Plaintiffs do not remember important details of their transactions, yet they seek to write the statute of limitations out of RESPA both for themselves and for the putative class. *See Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 164 (3d Cir. 2016). Moreover, Rule 23 cannot be used to deprive Emery of RESPA's statutory defenses. *See* Rules Enabling Act, 28 U.S.C. § 2072(b).

*ii.   Emery Tried to Take Discovery on Class Issues, Including a Trial Plan* ..28

Emery requested that Plaintiffs produce a trial plan so manageability issues could better be addressed through class certification briefing, but Plaintiffs refused.  Plaintiffs did not address manageability in their Motion, ignoring the Magistrate Judge's admonition that Plaintiffs were not "relieved of their burden of showing in their motion for class certification the manageability of the proposed class and/or the superiority of class litigation in this matter, whether by submission of a trial plan or some other means." Doc. 285, PageID 4094.

**B.  Class Adjudication Fails Rule 23(b)3 Superiority** .......................................28

A class action is not superior here because it will not "fairly and efficiently" adjudicate the controversy. Fed. R. Civ. P. 23(b)(3). The putative class faces management issues and class-wide litigation will be dominated by individual inquiries. Further, "[c]ourts in this Circuit have uniformly found that the RESPA statute's financial provisions bar a finding of superiority under Rule 23(b)(3)." *Toldy v. Fifth Third Mortg. Co.*, No. 1:09-CV-377, 2011 WL 4634154, at *2 (N.D. Ohio Sep. 30, 2011).  These financial provisions include attorney fees and treble damages.

**C.  Rule 23(a) Commonality and Typicality Were Not Met** ............................29

*i.   Commonality* ..............................................................................................29

Plaintiffs have not provided the "rigorous analysis" of commonality necessary to support class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  Plaintiffs' "common

questions" mostly just repeat the bare elements of RESPA, which does not satisfy the requirements of Rule 23.  *See* Mot. at 20, Doc. 326, PageID 9566.  Further, Plaintiffs admit they only have evidence of alleged wrongdoing for 13 of the 40 Emery teams whose loans they seek to include in the proposed class.

   *ii. Typicality*..............................................................................................30

Plaintiffs fail to meet Rule 23 typicality because the class "encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members." *Romberio v. UnumProvident Corp.*, 385 Fed. App'x 423, 431 (6th Cir. 2009).

**CONCLUSION**......................................................................................................30

**EXHIBITS**

1. EMERY 0032036 (Affidavit of Occupancy)
2. EMERY 0032588 (HUD-1 Certification)
3. EMERY 0033734 (Affiliated Business Arrangement Disclosure)
4. EMERY 0033846 (Settlement Service List of Providers)
5. EMERY 0033864 (Identified Provider List)
6. EMERY 0033958 (Settlement Service List of Providers)
7. EMERY 0034142 (HUD-1 Certification)
8. EMERY 0035951-54 (HUD-1 Settlement Statement)
9. EMERY 0035967 (HUD-1 Certification)
10. EMERY 0035980-82 (Business Relationship Disclosure Notice)
11. EMERY 0037014 (Settlement Service Provider List)
12. EMERY 0037023 (HUD-1 Certification)
13. EMERY 0060170-73 (Email re: Investment Property)
14. EMERY 0081491-93 (Email re: Investment Property)
15. Emery data on loans closed by Genuine Title (from wires)
16. Emery data on loans closed by Genuine Title (from Encompass)
17. Genuine Title data on Emery loans
18. Declaration of Troy Cyrus
19. Angela Pobletts NMLS printout
20. Plaintiffs' Supplemental Responses to Defendants' Second Interrogatories
21. *Roach* Complaint re: Genuine Title
22. *Wyman v. Park View FSB*, No. 1:09-CV-1851, 2011 U.S. Dist. LEXIS 124500, at *5-6 (N.D. Ohio June 14, 2011) (not available on Westlaw).
23. Chart summarizing gaps in alleged payments relied on by Plaintiffs

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................3, 26

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) ...................................................................9

*Carter v. Welles-Bowen Realty, Inc.*,
    553 F.3d 979 (6th Cir. 2009) ...................................................................18

*Carter v. Welles-Bowen Realty, Inc.*,
    736 F.3d 722 (6th Cir. 2013) ...................................................................18

*Carter v. Welles-Bowen Realty, Inc.*,
    No. 3:05-CV-7427, 2010 WL 908464 (N.D. Ohio Mar. 11, 2010) ...................................13, 29

*Cole v. City of Memphis*,
    839 F.3d 530 (6th Cir. 2016) ...................................................................3

*Contos v. Wells Fargo Escrow Co., LLC*,
    No. C08-838Z, 2010 WL 2679886 (W.D. Wash. July 1, 2010) ...............................................5

*Cross v. Nat'l Trust Life Ins. Co.*,
    553 F.2d 1026 (6th Cir. 1977) ...................................................................3

*Cunningham v. M&T Bank Corp.*,
    814 F.3d 156 (3d Cir. 2016) .....................................................................7, 27

*Daniels v. SCME Mortg. Bankers, Inc.*,
    680 F. Supp. 2d 1126 (C.D. Cal. 2010) ...............................................................13

*Egerer v. Woodland Realty, Inc.*,
    556 F.3d 415 (6th Cir. 2009) ...................................................................1, 4, 7, 17

*Elson v. Deutsche Bank Nat'l Tr. Co.*,
    No. 11-cv-14100, 2012 WL 1902916 (E.D. Mich. May 25, 2012) ...............................................3

*Freeman v. Quicken Loans, Inc.*,
    566 U.S. 624 (2012) ...........................................................................21

*Glover v. Std. Fed. Bank*,
    283 F.3d 953 (8th Cir. 2002) ...................................................................29

*Gooch v. Life Inv'rs Ins. Co.*,
   672 F.3d 402 (6th Cir. 2012) ...............................................................3

*Graham v. Manley Deas Kochalski LLC*,
   No. 08-CV-120, 2009 WL 891743 (S.D. Ohio Mar. 31, 2009).........................12, 15

*Heibel v. U.S. Bank N.A.*,
   No. 2:11-CV-00593, 2012 WL 4463771 (S.D. Ohio Sep. 27, 2012) .......................4

*Hinchliffe v. Option One Mortg. Corp.*,
   No. 08-2094, 2009 WL 1708007 (E.D. Pa. June 16, 2009).........................12, 14, 15

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ...............................................................3

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
   795 F.3d 380 (3d Cir. 2015)................................................................5

*Kiefaber v. HMS Nat' l, Inc.*,
   891 F. Supp. 2d 796 (E.D. Va. 2012) ...............................................22, 24

*Lee v. Javitch, Block & Rathbone*,
   LLP, 522 F. Supp. 2d 945 (S.D. Ohio 2007) ...........................................17

*Lindsey v. Normet*,
   405 U.S. 56 (1972)...........................................................................27

*Mauro v. Countrywide Home Loans, Inc.*,
   727 F. Supp. 2d 145 (E.D.N.Y. 2010) .................................................16

*McCarn v. HSBC USA, Inc.*,
   No. 1:12-cv-375, 2012 WL 5499433 (E.D. Cal. Nov. 13, 2012) ............................8

*McGee v. E. Ohio Gas Co.*,
   200 F.R.D. 382 (S.D. Ohio 2001) .......................................................19

*Menominee Indian Tribe v. United States*,
   136 S. Ct. 750 (2016)......................................................................4, 5

*Minter v. Wells Fargo Bank, N.A.*,
   No. 07-cv-3442, 2013 WL 1795564 (D. Md. Apr. 26, 2013)................................5

*O'Sullivan v. Countrywide Home Loans, Inc.*,
   319 F.3d 732 (5th Cir. 2003) .............................................................24

*Pettrey v. Enter. Title Agency, Inc.*,
   241 F.R.D. 268 (N.D. Ohio 2006) .....................................................5, 11, 13, 29

*Powers v. Fifth Third Mortg. Co.*,
  No. 1:09-cv-2059, 2011 WL 3811129 (N.D. Ohio Aug. 12, 2011)...................................13, 14

*Riddle v. Bank of Am. Corp.*,
  588 F. App'x 127 (3d Cir. 2014) .................................................................................8

*Rikos v. P&G*,
  799 F.3d 497 (6th Cir. 2015) ......................................................................................9

*Romberio v. UnumProvident Corp.*,
  385 F. App'x 423 (6th Cir. 2009) ..............................................................................30

*Spears v. First Am. eAppraiseIT*,
  No. 5:08-CV-00868, 2014 WL 4647679 (N.D. Cal. Sep. 16, 2014) ........................12

*Taggart v. Wells Fargo Home Mortg., Inc.*,
  563 F. App'x 889 (3d Cir. 2014) ...............................................................................14

*Toldy v. Fifth Third Mortg. Co.*,
  No. 1:09-CV-377, 2011 WL 4634154 (N.D. Ohio Sep. 30, 2011)................................ *passim*

*Truitt v. Cty. of Wayne*,
  148 F.3d 644 (6th Cir. 1998) ........................................................................................4

*Venture Glob. Eng'g, LLC v. Satyam Computer Servs., Ltd.*,
  730 F.3d 580 (6th Cir. 2013) ........................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................................3, 26, 29

*Wyman v. Park View FSB*,
  No. 1:09-CV-1851, 2011 U.S. Dist. LEXIS 124500 (N.D. Ohio June 14,
  2011) (Ex. 22).............................................................................................................19

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ................................................................................3, 26

**Statutes**

12 U.S.C. § 2601..............................................................................................................11

12 U.S.C. § 2606..................................................................................................11, 15, 17

12 U.S.C § 2607(a) .......................................................................................................2, 17, 18

12 U.S.C. § 2607(b) .........................................................................................................21

12 U.S.C. § 2607(c)(2)...................................................................................................1, 22

12 U.S.C. § 2614 ..................................................................................................................3

28 U.S.C. § 2072 ...............................................................................................................27

**Regulations and Rules**

12 C.F.R. 222.6, Supp. I .............................................................................................15, 16

12 C.F.R. § 1024.14 ..........................................................................................................17

24 C.F.R. § 3500.5(b) .................................................................................................11, 15

24 CFR § 3500.14(b) ........................................................................................................24

75 Fed. Reg. 36,271 (June 25, 2010) ........................................................................22, 23

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Fed. R. Civ. P. 23(a) .........................................................................................2, 3, 26, 29

Fed. R. Civ. P. 23(b) ..........................................................................................................5

Fed. R. Civ. P. 23(b)(3).....................................................................................3, 9, 26, 28

Fed. R. Evid. 901 ..............................................................................................................26

**INTRODUCTION**

Emery Federal Credit Union ("Emery") submits this opposition to Plaintiffs' Second Amended Motion for Class Certification ("Motion"), which seeks to certify a time-barred nationwide Real Estate Settlement Procedures Act ("RESPA") class. The Motion should be denied because it lumps together thousands of individual mortgage transactions over a six-year period that were obtained for different purposes and under unique circumstances. The only common fact among the transactions is that Emery was the mortgage broker or lender, and Genuine Title, LLC ("Genuine Title") provided one or more title services. Under Rule 23, these facts do not support certification of a class for every Emery borrower that used Genuine Title over a six year period.

At the outset, the Motion fails to meaningfully address one of the most critical issues concerning certification in this case: that the entire putative class is time-barred by RESPA's one-year statute of limitations. While Plaintiffs have identified the limitations issue as a common question that must be resolved, they have offered no means as to *how* the question could be answered on a class-wide basis. The Sixth Circuit has made clear that "if the statute of limitations in RESPA were subject to equitable tolling, the propriety of equitable tolling is determined on a case-by-case basis and is to be narrowly applied." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424 (6th Cir. 2009). Thus, every class member's diligence in pursuing (or not pursuing) their rights, and the circumstances they faced must be analyzed.[1] These inquiries predominate over the common question of tolling.

Further, as courts in the Sixth Circuit have recognized, every loan in a RESPA class

_____

[1] Plaintiffs' unsupported assertion that Emery team managers "used" HUD-1 Settlement Statements "to conceal" "the kickback scheme . . . from borrowers" is false. Mot. at 24-25, n.13, PageID 10455-56. If a team manager received a kickback for a referral, paid to him or to his separately-owned company, that would not be a charge "for origination services" and would not be disclosed on the HUD-1. Indeed, a charge "for origination services" would not be a RESPA violation at all. 12 U.S.C. § 2607(c)(2).

action must be individually scrutinized to determine if RESPA even applies to the transaction. As shown below, determining whether RESPA applies to each loan in Plaintiffs' proposed class is not a theoretical concern—hundreds of loans in Plaintiffs' proposed class appear to be for investment purposes, and are thus not subject to RESPA. Additionally, even for RESPA-covered loans, each loan transaction still must be scrutinized to determine: 1) if there was a referral; and 2) whether a thing of value was exchanged for the referral. 12 U.S.C § 2607(a). The evidence also indicates that Genuine Title's arrangements with various Emery team managers differed in important respects. Notably, the named Plaintiffs only had transactions with two Emery teams— those run by Adam Ellis and Gary Klopp. Further complicating class-wide adjudication, Plaintiffs completely fail to even mention the RESPA Section 8(b) fee-splitting claims, or describe how those claims can be managed apart from the Section 8(a) kickback claims.

Finally, Plaintiffs failed their burden to show that Rule 23 has been satisfied. Rule 23 requires a showing that class treatment is manageable up to and including trial, and that such treatment is superior to other forms of adjudication. Indeed, Emery repeatedly requested that Plaintiffs produce a trial plan so that the issue of manageability could be analyzed during class certification briefing, but Plaintiffs steadfastly refused to provide one. And while Magistrate Judge Litkovitz did not compel Plaintiffs' to produce a trial plan, her Order made clear Plaintiffs were not "relieve[d] . . . of their burden of showing in their motion for class certification the manageability of the proposed class and/or the superiority of class litigation in this matter, whether by submission of a trial plan or some other means." Doc. 285, PageID 4094. Yet the Motion contains only conclusory remarks on superiority and manageability.

## LEGAL STANDARD

Rule 23(a) requires four prerequisites to maintain a class action: (1) a class "so numerous that joinder of all members is impracticable"; (2) "questions of law or fact common to the class";

(3) named parties' claims or defenses "typical … of the class"; and (4) representatives that "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 606-07 (1997). A party seeking certification under Rule 23(b)(3) must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016).

As movants, it is Plaintiffs' burden to prove that Rule 23's certification requirements are met. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (compliance must be verified through "rigorous analysis"). "[T]he class determination should be predicated on evidence the parties present concerning the maintainability of the class action." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) "*Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues." *Id.*[2]

## ARGUMENT

**I. Plaintiffs' Time-Barred Class Cannot Be Certified.**

RESPA gives private litigants one year to bring a kickback or fee-splitting claim. 12 U.S.C. § 2614. As this Court recognized, the "date of occurrence" for which RESPA's statute of limitations begins to run is the "date of the closing of the mortgage loan." Doc. 242, PageID 9562 (citing *Elson v. Deutsche Bank Nat'l Tr. Co.*, No. 11-cv-14100, 2012 WL 1902916, at *8

---

[2] Plaintiffs' legal standard incorrectly states that "[t]he Court must accept as true the allegations of plaintiffs' complaint and resolve doubts in favor of plaintiffs." Mot. 16, Doc. 325-1, PageID 9562 (citing *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977)). However, the Sixth Circuit has rejected this outdated standard in the context of a class certification motion. *See Gooch v. Life Inv'rs Ins. Co.*, 672 F.3d 402, 417 (6th Cir. 2012).

(E.D. Mich. May 25, 2012)). Because no claims were filed against Emery until January 2, 2015, Plaintiffs are all time barred, unless equitable tolling applies. *See* Fourth Am. Comp., ¶¶ 61-64, Doc. 324, PageID 9359 (Plaintiffs' loans predate filing of First Am. Comp. by at least two years). Further, the evidence shows that no loans within Plaintiffs' class definition closed within one year of January 2, 2015, meaning the entire putative class is facially time-barred, too. *See* Doc. 325-6; Doc. 325-7.[3]

The limitations and tolling issue forecloses certification. Equitable tolling requires individual inquiry for *each* of the thousands of RESPA claims at issue. These inquiries will predominate over common questions. It is Plaintiffs' burden to prove, case-by-case, that each class member was diligent and faced extraordinary circumstances sufficient to be eligible for equitable tolling. *Egerer*, 556 F.3d at 424; *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 756 (2016). But the evidence shows that both Plaintiffs and putative class members had varying levels of participation in their transactions, and experienced differing circumstances.

A.      **Each Class Member's Equitable Tolling Claim Requires Individual Inquiry.**

The Sixth Circuit has made clear that "if the statute of limitations in RESPA were subject to equitable tolling, the propriety of equitable tolling is determined on **a case-by-case basis** and is to be narrowly applied." *Egerer*, 556 F.3d at 424 (emphasis added); *accord* Order Denying MTD, Doc. 242, PageID 3560 (citing *Egerer*, 556 F.3d at 424). Accordingly, to "prevent inequity," the doctrine of equitable tolling requires a "fact-specific" inquiry. *Heibel v. U.S. Bank N.A.*, No. 2:11-CV-00593, 2012 WL 4463771, at *7 (S.D. Ohio Sep. 27, 2012) (citing *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).

Courts around the country have recognized in the class action context that RESPA's

---

[3] The loan list compiled from Emery's data, Doc. 325-7, has one loan that closed in 2014 but that borrower was not referred to Genuine Title (*see* Section II-A-i, *infra*), and Plaintiffs' Interrogatory responses state that "[t]he putative class will not include individual who were not referred to Genuine Title." Ex. 20 (Plfs. Supp. Resp. to Defs. Int. 15(c)).

"statute of limitations may be considered . . . in determining whether individual considerations predominate for purposes of Fed. R. Civ. P. 23(b)." *Contos v. Wells Fargo Escrow Co., LLC*, No. C08-838Z, 2010 WL 2679886, at *6 (W.D. Wash. July 1, 2010); *see also Pettrey v. Enter. Title Agency, Inc.*, 241 F.R.D. 268, 284 (N.D. Ohio 2006) (denying certification in RESPA kickback case where "the Court will have to make an individualized inquiry as to the statute of limitations and whether equitable tolling or some other reason to excuse the statute of limitations applies."). Here, the "fact-specific" inquiry required to analyze thousands of equitable tolling claims should foreclose class certification.

### B. The Facts Concerning Named Plaintiffs' Alleged Diligence Vary

Plaintiffs' Motion does not address how Plaintiffs can prove the diligence prong of the equitable tolling inquiry on a class-wide basis. The Supreme Court recently clarified that diligence is a separate element from the extraordinary circumstances element necessary to establish entitlement to tolling. *Menominee*, 136 S. Ct. at 756. Thus, under Menominee, *some* diligence is required, and doing nothing precludes equitable tolling.

Plaintiffs' sole brief reference to diligence concedes that, at a minimum, due diligence requires "full participation in the loan process." Mot. at 24, Doc. 325, PageID 9570 (quoting *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.,* 795 F.3d 380, 404 (3d Cir. 2015)). Yet, the evidence for just the named Plaintiffs shows that the facts relevant to their alleged diligence in connection with their loans varied. Some barely participated, to say nothing of the many absent class members, such that even under the low standard advanced by Plaintiffs of whether they "full[ly] participat[ed] in the loan process," an individual inquiry for each class member will be required. *See Minter v. Wells Fargo Bank, N.A.*, No. 07-cv-3442, 2013 WL 1795564, at *3-*4 (D. Md. Apr. 26, 2013) (decertifying RESPA equitable tolling class due to individualized nature of due diligence inquiry). "The problem is not that the circumstances of

class members' transactions may create a jury question; it is that it only creates that jury question as to some class members and not others. Managing a class action where some class members had a duty to inquire while others did not, presents substantial logistical and mental challenges for the Court and jury which warrant decertification in this already complicated case." *Id*.

For example, Plaintiff Shelly Palombaro stated that she took no action to learn about the loan from Emery or Genuine Title's role and did not review any of the paperwork. S. Palombaro Dep. 23:9-19, Doc. 293, PageID 4994; 29:4-7, PageID 4995 ("You're asking me questions, and I didn't do any of this. He did it. He did all the paperwork, all the legwork, whatever. So I don't know."), 33:8-10, PageID 4995 (Q: "Did you review paperwork in connection with the loan?" A: "Trusted my husband on that. No."). Plaintiff Frank Palombaro also undertook little to no effort to learn about or understand what he was agreeing to or why Genuine Title was involved. F. Palombaro Dep. 42:8-17, Doc. 302, PageID 6521 ("[I]f I had to read every piece of paper that was put in front of me, it would take forever to do a closing. . . . So probably no to that."), 54:21-55:5, PageID 6524 (does not know what services Genuine Title performed), 61:13-62:10, PageID 6525 (does not know how he came to use Genuine Title and did not ask any questions about what title company would be used), 79:2-5, PageID 6530 (did not ask anyone at Emery why Genuine Title was being used for title services), 109:9-13, PageID 6537 (did not do anything to investigate Emery or Genuine Title).

Likewise, not all of the named Plaintiffs participated in all stages of the loan process. For example, Plaintiff Melinda Alvarado was out of town for part of the loan process and had her husband sign paperwork on her behalf, but did not review the documents her husband had signed after she returned. D. Alvarado Dep. 78:5-16, Doc. 296, PageID 5278; M. Alvarado Dep. 71:7-73:20, 74:3-13, Doc. 306, PageID 7688-89; Alvarado Dep. Ex. 4, Doc. 306-3, PageID 7799; M.

Alvarado Doc. 74:14-21, Doc. 306, PageID 7689.  Most named Plaintiffs also took no action to learn about Genuine Title before closing, and the fact that they now claim to have been unable to learn about the alleged referral agreements is belied by the fact that they did not undertake even cursory efforts to learn anything about Genuine Title, its services, its fees, or why Genuine Title was used.  *See, e.g.*, J. McAlpin Dep. 52:11-20, 57:4-58:17, 59:13-16, Doc. 295, PageID 5174-75; K. McAlpin Dep. 39:11-40:15, 66:17-21, Doc. 294, PageID 5061, 5068; M. Alvarado Dep. 61:2-13, 65:4-15, 66:7-15, 68:3-8, 75:17-76:2, 128:20-129:7, Doc. 306, PageID 7685-87, 7689, 7702; D. Alvarado Dep. 36:15-20, 87:2-6, Doc. 296, PageID 5258, 5267, 5280; G. Ratcliff Dep. 55:7-16, 79:7-16, Doc. 301, PageID 6398, 6404.  Where Plaintiffs did not even ask about Genuine Title, they cannot now complain that any such due diligence in connection with their loan would have been futile.  *See Egerer*, 556 F.3d at 423 (rejecting argument that "due diligence on their part would have been futile" just because Defendants' employees might have lied to plaintiffs had they asked about the company and charges at issue); *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 161 (3d Cir. 2016) (plaintiffs seeking to invoke equitable tolling in RESPA case were required to act "with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others").  Regardless of how the Court might ultimately rule on the diligence of each named Plaintiff, and of the thousands of absent putative class members, evaluating the totality of each class member's efforts—or lack thereof—will require individualized inquiry.

The Court will also need to analyze the diligence each putative class member undertook *after* their loan closed.[4]  As the Third Circuit explained in a similar case:

---

[4] All of the named Plaintiffs admit that they did nothing post-closing to learn about Genuine Title or their potential claims.  *See* J. McAlpin Dep. 57:25-58:12, Doc. 295, PageID 5174; K. McAlpin Dep. 67:2-13, Doc. 294, PageID 5068; M. Alvarado Dep. 123:2-16, 125:10-126:1, Doc. 306, PageID 7701; D. Alvarado 54:19-55:12, Doc. 296, PageID 5272; F. Palombaro Dep. 109:9-15, Doc. 302, PageID 6537; S. Palombaro Dep. 67:10-16, Doc. 293, PageID

> The plaintiffs did absolutely nothing to investigate their potential claims between the time they closed on their homes . . . and the time that they were contacted by counsel in 2012. . . . The plaintiffs argue that their diligence was reasonable under the circumstances because the closing documents they signed represented that the reinsurance arrangement was legitimate, and therefore they had no reason to investigate it. But we have held that merely asking defendants whether the plans were legal is inadequate to show reasonable diligence. Here, the plaintiffs did not make any inquiry. They simply accepted the defendants' representation that the arrangement was legal, and went about their lives for the next seven years, conducting no investigation at all during that time.

*Riddle v. Bank of Am. Corp.*, 588 F. App'x 127 (3d Cir. 2014) (cleaned up). Here, Plaintiffs were aware that Genuine Title was involved in their loans, as it was listed on their HUD-1 settlement statements. As in *Riddle*, doing nothing is insufficient to show diligence, so the Court will still need to examine each borrower's individualized circumstances to determine whether they did more than nothing *post-closing*. *See also McCarn v. HSBC USA, Inc.*, No. 1:12-cv-375, 2012 WL 5499433, at *6 (E.D. Cal. Nov. 13, 2012) (rejecting argument in RESPA class action that "any plaintiff who requires the assistance of counsel to discover the existence of a claim, including plaintiffs who conduct virtually no diligence, would be automatically entitled to equitable tolling of the statute of limitations for an indefinite period of time until that plaintiff retains counsel").

Further affecting Plaintiffs' ability to show that doing nothing post-closing to find out about their claims constituted diligence—and impacting their ability to show that the entire class was diligent even if they did nothing post-closing—is the fact that this case (and the Maryland case from which it was severed) was not the first suit against Genuine Title over these violations. Contrary to Plaintiffs' suggestions that they could not have known until contacted by counsel that Genuine Title was violating RESPA by compensating lenders for referrals, the alleged scheme was publicly exposed as early as December 2012, when a group of plaintiffs filed a

---

5005; G. Ratcliff Dep. 55:7-16, Doc. 301, PageID 6398; *see, e.g.*, Plfs. Ex. 22, Doc. 325-29, PageID 10362 (Resp. to Int. No. 3).

RESPA class action complaint in federal court in Maryland against Genuine Title and several lenders—*Roach v. Wells Fargo*, No. 1:12-cv-3800, Doc. 1 (D. Md. Dec. 27, 2012). Ex. 21.

### C. Individual Inquiry Is Required to Determine Whether Putative Class Members Are Eligible for Equitable Tolling.

The "predominance inquiry must focus on common questions that *can be proved* through evidence common to the class." *Rikos v. P&G*, 799 F.3d 497, 521 (6th Cir. 2015) (emphasis in original). In other words, "[t]o satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted)." This case cannot be tried on a class-wide basis because different evidence would be used for each putative class member to determine whether each was eligible for equitable tolling.

In ruling on the motion to dismiss, this Court relied in part on a Sixth Circuit opinion addressing diligence, which stated, "a plaintiff's behavior need only be reasonable under the circumstances . . . ." Doc. 242, PageID 3542-43 (citing *Venture Glob. Eng'g, LLC v. Satyam Computer Servs., Ltd.*, 730 F.3d 580, 587–88 (6th Cir. 2013)). Here, the circumstances facing each named plaintiff and each member of the putative class varied greatly. Thus, individual inquiry into the factual predicate underlying each class member's diligence is required, along with separate inquiry into the alleged extraordinary circumstances that each borrower faced.

For example, one borrower received a "Business Relationship Disclosure" that stated WCS Lending, LLC (the lender through whom Emery brokered that loan) was a "referring party" that had a "business relationship with Genuine Title, LLC." Ex. 10, EMERY 0035980-82. The disclosure, which was signed by the borrower, put the borrower on notice of the possibility that a lender might receive a "benefit" from its relationship with Genuine Title. *Id.*

The same borrower signed a "Certification Addendum" that stated, "I have carefully reviewed the HUD-1 Settlement Statement." Ex. 9, EMERY 0035967. The HUD-1 lists "Genuine Title, LLC" as the Settlement Agent, as well as fees paid to Genuine Title, in Section 1100. Ex. 8, EMERY 0035951-54. Other borrowers received affiliated business arrangement disclosures which did not list Genuine Title as a related entity. *See, e.g.*, Ex. 3, EMERY 0033734. The borrower on the latter loan faced different circumstances from the borrower on the former.

Still other borrowers received a "Settlement Service List of Providers," which stated, "[t]his list is provided to inform you of Particular Settlement Service Providers. You are not required to use the providers on this list." *See, e.g.*, Ex. 6, EMERY 0033958; *see also* Ex. 5, EMERY 0033864 ("You are welcome to use any of these providers or select different providers for these services."). In some cases Genuine Title was listed as a service provider, but other times Genuine Title was not listed. *Compare* Ex. 5, EMERY 0033864 (Genuine Title listed), *with* Ex. 4, EMERY 0033846 (Genuine Title not listed). Another borrower signed a Settlement Service Provider List that listed Genuine Title and stated: "I acknowledge receipt of the settlement servicer provider list and attest that **Emery Federal Credit Union did not recommend, steer or direct me to a particular provider on the list.**" Ex. 11, EMERY 0037014 (emphasis added). That particular disclosure also referenced RESPA (many similar documents did not), so the borrower on that loan had actual knowledge that RESPA applied at the time of the transaction. In contrast, three of the named Plaintiffs testified that they had not heard of RESPA. J. McAlpin 26:17-19, Doc. 295, PageID 5167; G. Ratcliff 17:22-24, Doc. 301, PageID 6388; D. Alvarado 19:17-20:4, Doc. 296, PageID 5263.

Because individual inquiry is required to determine whether a putative class member was both diligent and also faced extraordinary circumstances, Rule 23 predominance is not met.

## II.    Plaintiffs' Class Definition Requires Individual Inquiry.

As a threshold matter, every loan transaction must be analyzed to determine whether RESPA even applies because *not* all "federally related loans" are subject to RESPA. Then, even assuming that some 5,000 loans could be meaningfully analyzed for RESPA coverage, individual inquiry will be required for each element of Plaintiffs' RESPA claims.[5]

### A.  Every Loan Must Be Analyzed to Determine Whether RESPA Applies.

Plaintiffs' Motion is premised on the assertion that "[a]ll transactions at issue in the instant complaint are incident to or part of real estate settlement services involving federally related mortgage loans and thereby are subject to the provisions of RESPA, 12 U.S.C. § 2601, *et seq.*" *See* 4th Am. Comp. ¶ 82, Doc. 324, PageID 9362; *see also* Mot. at 16, Doc. 325, PageID 9562 (defining class as "borrowers on a **federally related mortgage loan** . . . originated or brokered by Emery for which Genuine Title provided a settlement service . . .") (emphasis added). That is incorrect. By its express terms, RESPA does *not* apply to all federally-related mortgage loans. Specifically exempt from RESPA's statutory regime are loans made "primarily for business, commercial, or agricultural purposes," or "on property of 25 acres or more." 12 U.S.C. § 2606(a)(1); 24 C.F.R. § 3500.5(b). Thus, a threshold issue that must be determined for each member of the putative class is whether RESPA even applies to his or her transaction. *Pettrey*, 241 F.R.D. at 284.

Neither Emery's nor Genuine Title's loan data includes all of the information and factors one must consider to establish RESPA coverage, and other sources of evidence vary from borrower to borrower, and may not resolve the question. Indeed, no single source of information will determine whether the loans in the putative class are subject to RESPA on a class-wide basis because whether RESPA is inapplicable due to the business purpose exemption depends on the

---

[5] Contrary to Plaintiffs' assertion, Mot. at 18, PageID 10449, Emery does not agree that the Parties have identified the borrowers who would fall under Plaintiffs' proposed class definition.

borrower's "primary purpose" for obtaining the loan. *See, e.g., Hinchliffe v. Option One Mortg. Corp.*, No. 08-2094, 2009 WL 1708007, at *3-4 (E.D. Pa. June 16, 2009) (the court "must look at the entire transaction and determine the borrower's primary motive for seeking the loan").[6]

For example, when looking at investment properties or rental properties, courts must consider:

1. The relationship of the borrower's primary occupation to the transaction. The more closely related, the more likely it is to be business purpose.
2. The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.
3. The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose.
4. The size of the transaction. The larger the transaction, the more likely it is to be business purpose.
5. The borrower's state[d] purpose for the loan.

*Toldy v. Fifth Third Mortg. Co.*, No. 1:09-CV-377, 2011 WL 4634154, at *3-4 (N.D. Ohio Sep. 30, 2011).[7] Of these factors, only the size of the transaction is a data point that can be easily extracted from Emery's loan origination system ("LOS"). Ex. 18, Cyrus Decl. ¶ 9. The "degree to which the borrower will personally manage the acquisition" is not a data point kept in Emery's LOS, or in the loan file, and would require testimony from the borrower. *Id.* ¶¶ 10, 12. Finally the "relationship of the borrower's primary occupation to the acquisition" is subjective, requiring a fact-intensive inquiry. *Id.* ¶ 11. These kinds of evidentiary complications are precisely why courts in this Circuit have refused to certify RESPA classes—determining a borrower's "primary

---

[6] While courts have used varying tests to determine a loan's "primary purpose," all of the tests still would require individual inquiry on a loan-by-loan basis. *See Graham v. Manley Deas Kochalski LLC*, No. 08-CV-120, 2009 WL 891743, at *7-8 (S.D. Ohio Mar. 31, 2009) (collecting cases).

[7] One court, critical of the RESPA business purpose line of cases in the Sixth Circuit, chose to resolve the issue by "simply asking a claimant to disclose, under penalty of perjury, the intended use for his or her loan funds." *Spears v. First Am. eAppraiseIT*, No. 5:08-CV-00868, 2014 WL 4647679, at *19 (N.D. Cal. Sep. 16, 2014). That would not work here. Mr. Ratcliff testified that he "did not know" what he did with the proceeds from his refinance transaction, but that it was "possible" that he used it for inventory for his business. Ratcliff Dep. 43:7-15, Doc. 301, PageID 6395. Moreover, as happened in *Hinchliffe*, a borrower may claim that the loan on his residence was primarily for his personal use and so covered by RESPA, only to have that claim disputed by the lender and rejected on summary judgment, based on the deposition testimony of his wife that the proceeds of the loan were actually used primarily "so he [could] operate his business." 2009 WL 1708007 at *4.

purpose" is an inherently individual inquiry that requires scrutiny on a transaction-by-transaction basis. *Pettrey*, 241 F.R.D. at 284; *Carter v. Welles-Bowen Realty, Inc.*, No. 3:05-CV-7427, 2010 WL 908464, at *3 (N.D. Ohio Mar. 11, 2010), *aff'd* 736 F.3d 722 (6th Cir. 2013); *Powers v. Fifth Third Mortg. Co.*, No. 1:09-cv-2059, 2011 WL 3811129, at *19 (N.D. Ohio Aug. 12, 2011); *Toldy*, 2011 WL 4634154, at *4.

Sometimes, determining the primary purpose of a transaction is straightforward because there is clear evidence, such as emails showing that the loan is for an investment property. *See* Ex 13, EMERY 0060170-73 (subject line "Investment Property); Ex 14, EMERY 0081491-93 ("it is an investment property"). Similarly, some of the putative class members' loan files contain a notarized "Affidavit of Occupancy" in which the borrower certifies that the "[p]roperty is or will be an investment property. *See, e.g.*, Ex. 1, EMERY 0032036. The preceding examples include borrowers that fall within Plaintiffs' class definition, but their transactions are not subject to RESPA. *See Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1130-31 (C.D. Cal. 2010) (dismissing RESPA claims where borrower's stated purpose for obtaining the loan was "investment"). Other loans that fall within Plaintiffs' class definition but that are not subject to RESPA have been identified through loan transaction data exported by Emery and Genuine Title. One data field extracted from Emery's LOS and produced in discovery tracks whether the loan is for a primary residence, a second home, or an investment property. *See* Exs. 15, 16. This data reveals that at least 305 loans were for investment properties. *Id.* These transactions are "clearly not covered by RESPA." *Powers*, 2011 WL 3811129 at *17. However, the internal coding of the loan does not end the inquiry, as discussed below.

The loan data from Genuine Title, by contrast, does not include a "loan occupancy field," but a different field, labeled "Property_Commercial," shows that at least two properties were for

commercial purposes.  *See* Ex. 17, line 558 (loan no. ending 1888), line 3264 (loan no. ending

3142).  However, the "Property_Commercial" data appears to be significantly incomplete.  3,122

of the loans on the Genuine Title spreadsheet have no data in that field.  Further, in at least two

instances, the loan comments in the Genuine Title data indicate that additional loans were for

investment properties.  *Id.* at line 1337 (loan no. ending 9470), line 204 (loan no. ending 7844).

Here again, these are examples of loans that cannot be included in Plaintiffs' class because

RESPA does not apply to business purpose transactions.  *See Taggart v. Wells Fargo Home*

*Mortg., Inc.*, 563 F. App'x 889, 892 (3d Cir. 2014).

      The rest of the loans will also have to be scrutinized to determine RESPA's applicability

on a case-by-case basis.  *See Powers*,  2011 WL 3811129 at *17 (examining spreadsheet with

data identifying certain transactions as investment properties, but still finding that of the 19,217

total transactions, "80%-90% of the [other] cases would have to be examined on an individual

basis to determine whether they are covered by RESPA").  This is because the "primary

purpose" inquiry does not hinge on the nature of the property securing the loan, but instead on

the ultimate *purpose* for which the loan proceeds were used.  *See Hinchliffe*, 2009 WL 1708007

at *4.  A borrower may take "cash out" of a primary residence, or *refinance* a loan that took

"cash out" of a primary residence.  If the cash was used for a business purpose, the loan is not

subject to RESPA.  Thus, almost all loans must be analyzed for RESPA coverage.  *See Toldy*,

2011 WL 4634154 at *3.  These are not theoretical concerns, but ones that will actually have to

be addressed on a case-by-case basis.  For example, of the at-issue loans, 4,817 are coded as a

"No Cash Out Refinance."  *See* Exs. 15, 16.  Any of these loans could be exempt from RESPA,

if the debt that was refinanced was originally incurred for business, commercial, or agricultural

purpose.  12 U.S.C. § 2606(a)(1).  Simply because the underlying debt was secured by a home

*does not* mean the debt is "consumer" in nature. *Hinchliffe*, 2009 WL 1708007 at *4. The following types of loans are deemed to have a "business purpose," and are thus exempt from RESPA, even though the loans are "federally-related" and may be secured by the borrower's primary residence:

1. A loan to expand a business, even if it is secured by the borrower's residence or personal property;
2. A loan to improve a principal residence by putting in a business office;
3. A business account used occasionally for consumer purposes.

12 C.F.R. §226, Supplement I to Part 226—Official Staff Interpretations, cmt. 226.3(3)(a)(3) (ii).1 (Eff. Oct. 1, 2011).[8] Accordingly, the Court cannot determine a loan's "primary purpose" (and thus whether RESPA applies at all) without a case-by-case analysis. *Toldy*, 2011 WL 4634154 at *3.

Emery's exported loan data indicates that 152 of the loans were a "Cash-Out Refinance," and that 145 of those loans were secured by the "Primary Residence." *See* Exs. 15, 16 (column titled "Trans Details Loan Purpose"). There are generally no restrictions on how a borrower uses cash taken out during for a refinance. Ex. 18, Cyrus Decl. ¶ 18. The loan proceeds could be used for anything, including to build or expand upon a business. *Id.* ¶ 19. Without knowing how the cash proceeds were used, it is impossible to determine whether RESPA applies to these loans. *See Graham*, 2009 WL 891743 at *10.

Further, when borrowers received cash out on a loan, they did not always disclose if the cash was for a business purpose. Ellis Dep. 235:22-236:16, Doc. 305, PageID 7491 (Q: "[I]f a borrower [] wanted to take out loans for a business purpose, wanted to [] cash out from their

---

[8] This citation is to the version of the Federal Reserve Board's Official Commentary to Regulation Z governing TILA, applicable at the time of Plaintiffs' transactions. RESPA and applicable regulations expressly provide that the "business, commercial, or agricultural" exemptions under RESPA are identical to those under TILA and Regulation Z, and that "persons may rely on Regulation Z in determining whether the [RESPA] exemption applies." 24 C.F.R. § 3500.5(b)(2); *see also* 12 U.S.C. § 2606(b).

house to invest [] in a business they owned, they wouldn't have to tell you why?" A: "No.");

Mandelberg Dep. 195:16-196:6, Doc. 304, PageID 7195 (about half of loans were cash-out

refinances; Q: "Do you always know the purpose of the use of the cash?" A: "No.").  Likewise,

if a loan was originally taken out for a business purpose and was then refinanced with Emery,

Emery would not know that the loan being refinanced had a business purpose.  *Id*. 194:14-

195:11, PageID 7195 (Q: "For refinance transactions . . . would you have known whether the

previous loan that was being refinanced had been taken out for business purposes?"  A: "I would

have no clue."); Ellis Dep. 236:17-237:7, Doc. 305-1, PageID 7491-92 (Q: "So if a borrower had

previously taken a loan out to take money out of their house for a business purpose and was then

refinancing that loan, you wouldn't necessarily know?"  A: "No."); Klopp Dep. 116:16-21, Doc.

307, PageID 7874 (Q: "[W]ould you know what the purpose of that cash out had been if they

were merely refinancing that lien?"  A: "No.")

These examples only scratch the surface of the complications that will arise from trying

to determine whether RESPA applies to some 5,000 individual loan transactions.  For example,

when a loan is secured by real property with two or more housing units, a type of loan which

Emery originated in the relevant time period, Ex. 18, Cyrus Decl. ¶ 20, determining whether the

"business exemption" applies is even more complicated.  In the case of non-owner occupied

rental properties, credit extended to "acquire, improve, or maintain" the property is deemed be

for business purposes.  12 C.F.R. 222.6, Supp. I, cmt. 226.3(3)(a)(4).  However, this special rule

does not apply if "the owner expects to occupy the property for more than 14 days during the

coming year."  *Id*.  It is each Plaintiff's "burden . . . to show that the loan in question was

obtained for personal, as opposed to business, purposes."  *Mauro v. Countrywide Home Loans,*

*Inc.*, 727 F. Supp. 2d 145, 154 (E.D.N.Y. 2010).  As the foregoing shows, one cannot assume, as

Plaintiffs do, that RESPA applies to every "federally-related" mortgage loan. RESPA's plain text says otherwise (12 U.S.C. § 2606(a)(1)), and the available evidence already shows that a significant number of loans in the proposed class are not covered by RESPA.

Finally, the complications do not end with the "business purpose" inquiry. Emery's LOS does not list property acreage, so it is difficult to determine which of the putative class member's loans fall within RESPA's 25-acre exemption. Ex. 18, Cyrus Decl. ¶¶ 21-23, 25.[9]

### B. RESPA Liability Must be Determined on a Loan-by-Loan Basis.

RESPA section 8(a) provides that no one may give or receive "any fee, kickback, or thing of value" in exchange for a referral for real estate settlement service. 12 U.S.C. § 2607(a). The existence of "a payment or a thing of value" is a necessary element to prove a RESPA section 8(a) violation. *Egerer*, 556 F.3d at 427.

Plaintiffs make the unfounded claim that "RESPA claims are not required to be proved on borrower specific evidence," stating that RESPA violations can "be proven by circumstantial evidence of a 'practice, pattern or course of conduct.'" Mot. at 25-26, Doc. 325, PageID 9571-72 (citing 12 C.F.R. § 1024.14(e)). In other words, Plaintiffs are saying that all of the class members can be treated the same, and that no evidence specific to any particular class member is needed. Not so.

Initially, § 1024.14, the regulation cited by Plaintiffs, does not state that borrower-specific evidence is not needed, nor that violations "can be proven" by circumstantial evidence of a "practice, pattern or course of conduct." Mot. at 25-26, Doc. 325, PageID 9571-72. Rather, the regulation states that an "agreement" for the referral of business can be established by a "practice, pattern or course of conduct," when a "thing of value is received repeatedly." 12

---

[9] Acreage is usually reflected on an appraisal, Ex. 18, Cyrus Decl. ¶ 23, but many of the refinance loans at issue were FHA streamline or VA interest rate reduction refinance loans, which do not require an appraisal. *Id.* ¶ 24; s*ee Lee v. Javitch, Block & Rathbone*, LLP, 522 F. Supp. 2d 945, 959 (S.D. Ohio 2007) (Beckwith, S.) (denying certification where determining class membership would require a file-by-file review).

C.F.R. § 1024.14.  Even assuming, *arguendo*, that Plaintiffs established agreements between Genuine Title and certain Emery team managers (and putting aside that the evidence shows that any such agreements were individual to each manager), there is no common evidence that could be used to establish the other two primary elements of a RESPA kickback claim: 1) whether there was a referral; and 2) whether a thing of value was given in exchange for that particular referral.  *See* 12 U.S.C. § 2607(a).

*i.  Every Transaction Must be Scrutinized for a Referral under § 8(a)*

RESPA liability cannot be established by lumping together thousands of loan transactions in collective fashion.  As the Sixth Circuit explained, RESPA "creates an **individual right** to receive referral services untainted by kickbacks or fee-splitting."  *Carter v. Welles-Bowen Realty, Inc*., 553 F.3d 979, 989 (6th Cir. 2009) (emphasis added); *id*. (the violation "must cause individual, rather than collective, harm").  "RESPA . . . authorizes suits only by individuals who receive a loan that is accompanied by an **unlawful referral,** which is plainly an **individualized injury.**"  *Id*. (emphasis added).  Here, an individualized inquiry is required to determine whether *each* putative class member was referred to Genuine Title.

Former team manager Adam Mandelberg testified that borrowers always had the right to choose a title company, and in some instances they specifically chose to use Genuine Title for their own reasons without a referral from an Emery employee.  Mandelberg Dep. 191:13-21, Doc. 304-1, PageID 7194.  In fact, Mandelberg testified that he remembered one such borrower by name who chose to use Genuine Title without a referral.  *Id.* at 194:2-6, PageID 7195.  That borrower, and anyone similarly situated, does not have a RESPA claim against Emery because RESPA prohibits "a fee in exchange for a *referral*."  *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 724 (6th Cir. 2013) (emphasis added) (citing 12 U.S.C. § 2607(a)).  Yet, the loan in question still falls within Plaintiffs' class definition, which includes any borrower "on a federally

related mortgage loan . . . for which Genuine Title provided a settlement service." Mot. at 16, Doc. 325, PageID 9562.

The court in *Wyman v. Park View FSB*, denied certification of a class whose proposed definition was strikingly similar to what Plaintiffs have proposed: "All borrowers who . . . received a federally related residential mortgage loan from defendant [mortgage lender], where the HUD-1 or HUD-1 a Settlement Statement, or other documents in the loan file, includes a payment to [defendant title company] for real estate settlement services." No. 1:09-CV-1851, 2011 U.S. Dist. LEXIS 124500, at *5-6 (N.D. Ohio June 14, 2011) (Ex. 22). The *Wyman* court noted that the class definition included "all borrowers that made a payment to [the title company] for real estate settlement services, whether or not the individual loan involved an alleged RESPA violation based upon a referral," and found that individual inquiries would predominate because, if "the Court certified the putative class as defined in Plaintiffs' Motion, an individualized inquiry would be necessary to determine whether [the mortgage lender] referred each individual borrower to [the title company] for settlement services." *Id.* at *6.

Just so here. Plaintiffs claim that the "common factual and legal issues relevant to Emery's" liability include the "actual referrals of a loan." Mot. at 24, Doc. 325, PageID 9570. But Plaintiffs have not stated what common proof satisfies RESPA's referral element on a class-wide basis, or how the existence of a referral will be determined for each particular transaction. Further, as in *Wyman*, Plaintiffs' class definition includes *any* borrower who used Genuine Title, regardless of whether there was a referral, and regardless of whether there was an actual RESPA violation. *See McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001) (class definition is overbroad where it includes individuals who were not harmed by defendant). Because determining whether a referral occurred with respect to any particular loan transaction

will require a loan-by-loan inquiry, certification should be denied.

*ii. Every Transaction Must Be Scrutinized for a Thing of Value under 8(a)*

Plaintiffs must show the payment of a "fee, kickback, or thing of value" in exchange for the referral for claims under RESPA section 8(a)—a referral alone is not a RESPA violation—yet the evidence shows that Genuine Title did not make such a payments in connection with every Emery loan for which Genuine Title performed title services. Thus, the Court will need to make an individualized inquiry into whether any particular referral was made in exchange for a payment, which cannot be done a class-wide basis. Genuine Title owner Jay Zukerberg testified that only about half of Genuine Title's business came from referral agreements. Zukerberg Dep. 17:1-11, 36:1-5, Doc. 300, PageID 6208, 6213. Additionally, while Genuine Title did business in all 50 states, it was only licensed in 35 states and had workshare agreements in the other 15 states. *Id.* at 20:2-6, PageID 6209. For loans closed in the 15 states where Genuine Title had workshare agreements, it did not pay anything to the referrer, even if there was a referral agreement. *Id.* at 52:15-20, PageID 6217 ("The work share ones were done different because I really made nothing in the work share states. . . . I might not have paid on those."); Ex. 2 to Fourth Am. Compl., Doc. 324-2 at 2, PageID 9374 (notes showing no payment for workshare loan).

It also appears that Genuine Title paid some team managers on an ad hoc or temporary basis, and not for each loan (and not even for most loans) from that team. For example, John Hauck was a team manager whose arrangement with Genuine Title "was a little bit different in the sense that he received subsidy in the beginning to get on his feet," but "once he was self-sufficient, ultimately did not get credits after that." Glickstein Dep. 64:1-9, Doc. 299, PageID 6026. Brandon Glickstein, who managed Hauck's account at Genuine Title, testified that Hauck "received subsidy in the beginning," and these payments occurred for "a period of time while he

20

was at Emery but not the entire period of time." *Id.* at 82:6-83:1, PageID 6031.

Further, between 2011 and 2014, Emery has identified at least 40 teams which had loans closed by Genuine Title. Plfs. Ex. 18, Def's Am. Resps. to Plfs. 1st Ints., No. 1, Doc. 326-22, PageID 11098. Plaintiffs claim to have evidence showing alleged referral agreements and/or payments for only 13 of these teams, Mot. at 10-11, Doc. 325, PageID 9556-57, yet seek a class which covers every Emery loan regardless of which team it came from.[10] Since Plaintiffs have not submitted *any* evidence that Genuine Title paid for referrals from any of the other 27 Emery teams that had loans closed by Genuine Title—and even if Plaintiffs' evidence were sufficient for the 13 teams (which it is not)—any loans related to the other 27 teams would require additional scrutiny to determine if a payment was made. *See* Feb. 21, 2017 Hearing Trans. 13:21-14:4, Doc. 314, PageID 9100-01 (regarding list of 40 teams which had loans closed by Genuine Title, Plaintiffs' counsel admitted that "[t]here are some branches listed on this list that we just don't have any evidence that that branch in any way received a kickback").

       iii. *Section 8(b) Applies to Few Teams, and Requires Scrutinizing Each Transaction for a Particular Fee that Was Split*

Section 8(b) applies to fee-splitting. 12 U.S.C. § 2607(b). A Section 8(b) claim (fee-splitting) is not the same as a Section 8(a) claim (kickback) because "each subsection reaches conduct that the other does not." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 636 (2012). Plaintiffs' Motion wholly fails to distinguish their Section 8(b) claims from their Section 8(a) claims, and the Motion does not mention Section 8(b) or fee-splitting at all. Plaintiffs cannot lump together some 5,000 Section 8(a) and 8(b) claims, because the evidence shows that only borrowers with a small number of Emery teams could possibly have 8(b) claims. *See* Zukerberg Dep. 59:12-22, 61:22-62:8, 63:6-64:15, 116:18-117:6, Doc. 300, PageID 6219-20, 6233 (fees

---

[10] Genuine Title negotiated payment agreements separately with individual team managers. Zukerberg Dep. 44:4-14, Doc. 300, PageID 6215.

allegedly split with Ellis, Mandelberg, and Pobletts only).  Indeed, Zukerberg testified that Klopp was always paid a flat fee for each loan, rather than a portion of any particular fee.  *Id.* at 63:21-64:4, PageID 6220.  And with respect to any putative class member who could potentially have a fee-splitting claim, each transaction would still have to be separately scrutinized under the unique elements of Section 8(b), further complicating class-wide adjudication.

### iv.  *Section 8(c)(2) Requires an Individual Inquiry for all Klopp Loans*

Gary Klopp, the Emery team manager who had the most loans closed by Genuine Title, testified that he provided services to Genuine Title in exchange for the payments he received.  Klopp Dep. 124:13-21, 128:7-18, Doc. 307, PageID 7876-77.  Thus, inquiry into each of the Klopp loans will be necessary to determine whether the payments he received fall under the RESPA section 8(c)(2) "safe harbor."  Section 8(c),  often referred to as a "carve out," provides that "[n]othing in this section shall be construed as prohibiting . . . the payment to any person of a bona fide salary or compensation or other payment . . . for services actually performed."  12 U.S.C. § 2607(c)(2).

At different times, Klopp operated two companies: Carroll Abstracts, Inc. ("Carroll Abstracts"), and All County Settlements, LLC ("All County").  Klopp Dep. 71:18-72:2, Doc. 307, PageID 7863.  Klopp formed Carroll Abstracts in 2009, several years before he started at Emery.  *Id.* at 32:5-9, 70:3-11, PageID 7853, 7863.  Carroll Abstracts "researched [property titles] and cleared judgments and liens and [] old lingering mortgages and mechanic's liens."  *Id.* at 72:3-8, 82:21-83:14, PageID 7863, 7866 (Carroll Abstracts' agreement with Genuine Title provided that "we would provide payoffs, clear judgments, subordinations, clear [] imperfections in title").  Klopp testified that Carroll Abstracts provided at least some services in connection with every loan Klopp sent to Genuine Title, and the overall types of services varied depending on the title issues that existed with a particular loan.  *Id.* at 72:19-21, 77:10-78:1, 80:17-81:5,

PageID 7863, 7864-65 ("Every loan needed work. . . . [Y]ou don't know if there's a problem with the loan until the title is ordered and until you review the title[.]").

Carroll Abstracts eventually ceased operations and Klopp started All County. *Id.* at 83:15-21, 84:21-85:9, PageID 7866. All County did "the same exact thing that Carroll Abstracts was doing," such as "clearing liens and judgments, and ordering payoffs, and clearing imperfections in title." *Id.* at 87:21-88:6, PageID 7867. At one point, All County also provided a service where it would send notaries to the borrower's home for what is called "pre-sign." *Id.* at 88:8-89:15, PageID 7867. Genuine Title paid All County for these services under a similar agreement as it had with Carroll Abstracts. *Id.* at 95:7-96:1, PageID 7869. The type of title-clearing work performed by Carroll Abstracts and All County was work which was normally performed by the title company and would otherwise have been the title company's job to perform. *Id.* at 130:7-131:8, PageID 7878. Klopp testified that he received the payments in return for services, and not for referrals. *Id.* at 124:13-21, 128:7-18, PageID 7876-77. Even if Plaintiffs argue that the service provided by Klopp's companies were not reasonably related to the fees paid, that would require an individualized inquiry to determine what title-related services Klopp's companies performed in connection with each loan transaction and assess their overall value as compared to any fees paid by Genuine Title.

RESPA does not prohibit referrals. "Rather, RESPA prohibits a real estate broker or agent from receiving a fee for such a referral, as a referral is not a compensable service." 75 Fed. Reg. 36271, 36272 (citing 24 CFR § 3500.14(b)). In this case, Plaintiffs will have to prove on a loan-by-loan basis that Klopp did not perform "compensable services." *See O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 742 (5th Cir. 2003) (denying certification because "RESPA § 8 liability is established by making individual comparisons of compensation to actual

23

services, not by presuming fire where there is smoke"). To determine what services qualify for the 8(c)(2)'s safe harbor, courts look to the interpretative rule issued by the Department of Housing and Urban Development, known as the "Home Warranty Rule." *See Kiefaber v. HMS Nat'l, Inc.*, 891 F. Supp. 2d 796, 798 (E.D. Va. 2012) (citing Home Warranty Companies' Payments to Real Estate Brokers and Agents, 75 Fed. Reg. 36,271 (June 25, 2010)). Under the Home Warranty Rule, "compensable services" must be: "(1) actual, (2) necessary and (3) distinct from the primary services provided by the real estate broker or agent, (4) that are not nominal, and (5) for which duplicative fees are not charged." *Kiefaber*, 891 F. Supp. 2d at 799. Plaintiffs have not set forth how they will possibly undertake analysis of these factors with respect to the 1,200-plus Klopp loans in the proposed class. *See* Exs. 15, 16. Accordingly, certification should be denied. *O'Sullivan*, 319 F.3d at 742 (predominance not met because compensable services analysis "must be performed on a transaction-by-transaction basis, because a single finding of liability based on an unreasonable relationship between goods and services does not necessitate the conclusion that such unreasonableness exists on a classwide basis").

## C. Genuine Title Interacted with Emery Teams in Different Ways

Each Emery team worked differently with Genuine Title, which destroys predominance.

### i. *Teams Had Different Arrangements and Histories with Genuine Title.*

Plaintiffs have not shown that Genuine Title had a referral agreement with every loan officer, or even every team manager, who worked at Emery during the class period, or that each agreement was the same. Indeed, for those who did allegedly have such an agreement, there is testimony that Genuine Title negotiated the payment agreements individually with each team manager or loan originator. Zukerberg Dep. 44:4-14, Doc. 300, PageID 6215. Many of these agreements were negotiated between Genuine Title and the team managers years before they started working at Emery. *See, e.g.*, *id.* at 27:20-30:18, 31:11-34:16, PageID 6211-13. Thus,

individualized testimony and evidence as to each of these people would be required to determine whether they had an agreement with Genuine Title, and if so, what that agreement was. *See, e.g.*, Zukerberg MIA Dep. 37:2-6, Doc. 297, PageID 5597 (for the terms of the agreements, "[e]verybody was different."); Glickstein Dep. 28:11-15, Doc. 299, PageID 6017 (discussing use of money payments versus marketing credits).

### ii. *Only the Ellis and Klopp Teams Are Represented by Named Plaintiffs.*

Plaintiffs' Motion admits that the putative class representatives received their loans from only two of the thirteen Emery teams that Plaintiffs allege were making improper referrals to Genuine Title. Mot. at 15-16, Doc. 325, PageID 9561-62. There are no class representatives who can address the unique circumstances of the other eleven teams, to say nothing of the 27 teams for which Plaintiffs have no evidence of wrongdoing but still seek to include in the class. Six of the seven named Plaintiffs—the Palombaros, Alvarados, and McAlpins—received their loans from Gary Klopp's team, and one—Gary Ratcliff—received his loan from Adam Ellis's team. Mot. at 15-16, Doc. 325, PageID 9561-62. From this small sampling, there is no way to know whether the named Plaintiffs' experiences were representative of the class members who got their loans from other teams. And in turn, there will be no evidence as to how or whether the vast majority of teams allegedly referred class members to Genuine Title.

### D. The Class Definition Is Overbroad

Plaintiffs' class definition—which includes all loans "originated or brokered by Emery for which Genuine Title provided a settlement service. . . between January 1, 2009, and December 31, 2014"—is overbroad in several respects. Importantly, Defendant Emery Federal Credit Union did not have a national lending presence prior to April 2011. Ex. 18, Cyrus Decl. ¶¶ 35, 38. Non-party Emery Financial Services, Inc., a corporate entity that is separate and distinct from Emery Federal Credit Union, brokered loans prior to that time. *Id.* ¶¶ 30, 32, 36,

37.[11]  And, according to Plaintiffs' loan list, which was generated from data stored at Genuine Title, none of the loans prior to April 2011 are associated with any of the Emery teams at issue in this litigation for which Plaintiffs claim to have any evidence of wrongdoing.  *See* Ex. 17.

Plaintiffs' class definition is overbroad on the tail end as well, since Plaintiffs have provided no evidence of kickbacks from the last part of the proposed class period.  Nor have Plaintiffs explained why the class should extend to December 31, 2014, when Genuine Title was ordered into receivership in August 2014.  *See* Doc. 325-5, PageID 9611.

## III.  Plaintiffs Failed their Burden to Show the Prerequisites of Rule 23 Have Been Met.

Plaintiffs' Motion was required to contain an "adequate statement of the basic facts to indicate that each requirement of [Rule 23] is fulfilled."  *Young*, 693 F.3d at 537 (citations omitted).  "[T]his means the class determination should be predicated on evidence the parties present concerning the *maintainability* of the class action."  *Id*.  Yet Plaintiffs failed to demonstrate a class action of some 5,000 individual loans was manageable or superior under Rule 23(b)(3), or that commonality or typically was met under Rule 23(a).

### A.  The Putative Class is Not Manageable

#### i.  Emery Has a Due Process Right to Raise All Available Defenses

Rule 23's manageability test is only satisfied if trial of the case as a class action can be accomplished "without sacrificing procedural fairness."  *Amchem*, 521 U.S. at 616.  *Dukes*, 564 U.S. at 367 ("Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims.")  Here, there is no contesting that were Plaintiffs to bring their claims individually, Emery would have the right to raise the statute of limitations defense, and to challenge RESPA coverage, as to *each* plaintiff.  *See*

---

[11]  While the "Client_Name" column in Plaintiffs' Genuine Title loan chart lists "Emery Federal Credit Union" for loans predating April 2011, that chart was not authenticated pursuant Fed. R. Evid. 901, and it seems likely that the client name field was changed later in the database when loan originators moved to the Credit Union.

*Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense."). Yet Plaintiffs have offered no plan or means to manage the equitable tolling or RESPA coverage issues that would ensure Emery is able to raise all appropriate defenses against each putative class member. There are also evidentiary issues that would prejudice Emery if a class were certified, since the named Plaintiffs claim not to remember important details of their transactions. *See*, *e.g.*, Plfs. Ex. 22, Doc. 325-29, PageID 10363 (Resp. to Int. No. 6; "Plaintiffs do not remember communicating with any Genuine Title employees."); Plfs. Ex. 23, Doc. 325-30, PageID 10372 (same); Plfs. Ex. 24, Doc. 325-31, PageID 10379 (same); Plfs. Ex. 25, Doc. 325-32, PageID 10385-86 (same). *See also* Ratcliff 37:2-7, Doc. 301, PageID 6393 (Plaintiff Ratcliff denied having heard of Genuine Title before his 2012 loan from Emery); *id.* 41:9-20, PageID 6394 (he had in fact used Genuine Title less than a year before); *id.* 43:16-18, PageID 6395 (could not remember whether he was referred to Genuine Title).

As the Third Circuit recently noted, statutes of limitations are designed to protect defendants where "memories have faded":

> [A]ccepting Plaintiffs' theory in this case—toll indefinitely the limitations period for claims under RESPA until a lawyer can find the right plaintiff to join a lawsuit and notify other putative plaintiffs—would effectively write the statute of limitations out of RESPA.

*Cunningham*, 814 F.3d at 164. Plaintiffs, who profess to remember little about their transactions, not only seek to write the statute of limitations out of RESPA for their own claims, but for thousands of other loans that fall within the proposed class. But to do so would be fundamentally unfair to Emery. A procedural mechanism that aggregates claims on class-wide basis— here, Fed. R. Civ. P. 23—cannot be used to deprive Emery of RESPA's statutory defenses. *See* Rules Enabling Act, 28 U.S.C. § 2072(b) (stating that rules of procedure "shall not

abridge, enlarge, or modify any substantive right.").

   *ii.   Emery Tried to Take Discovery on Class Issues, Including a Trial Plan*

Emery served Plaintiffs with class certification interrogatories, including a request for a trial plan, as recommended by McLaughlin on Class Actions § 3:7 (13th ed. 2016).[12]  Plaintiffs refused to substantively respond and Emery moved to compel.  Doc. 273, PageID 3664.

Magistrate Judge Litkovitz denied that portion of Emery's motion to compel, but her Order made clear Plaintiffs were not "relieved of their burden of showing in their motion for class certification the manageability of the proposed class and/or the superiority of class litigation in this matter, whether by submission of a trial plan or some other means."  Doc. 285, PageID 4094.  Plaintiffs did not heed this admonition, however, and the Motion has only two sentences on manageability.  *See* Mot. at 29, Doc. 325, PageID 9575.  Because Plaintiffs have not met their burden with respect to Rule 23(b)'s manageability requirement, the Motion should be denied.

   **B.    Class Adjudication Fails Rule 23(b)3 Superiority**

A class action is not superior here because it will not "fairly and efficiently" adjudicate the controversy.  Fed. R. Civ. P. 23(b)(3).  As explained above, the putative class faces massive management issues and class-wide litigation will be dominated by individual inquiries that Plaintiffs' have not accounted for.  Plaintiffs' main point on superiority is that the aggregation of 5,000 RESPA claims is a more efficient form of adjudication.  Mot. at 28-29, Doc. 325, PageID 9574-75.  But "[c]ourts in this Circuit have uniformly found that the RESPA statute's financial provisions bar a finding of superiority under Rule 23(b)(3)" because they allow for treble

---

[12] Trial plans are consistently recommended in Rule 23's committee notes and class action treatises, and are often required by federal courts across the country.  *See, e.g.* Fed. R. Civ. P. 23 (b)(3) Advisory Committee Notes (2003) ("[An] increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible to class-wide proof.");  *see also* Manual for Complex Litigation (Fourth) §§ 21.141, 22.318 ("A trial plan addressing each element of the claims can help to identify the nature and extent of the individualized proof required.").

damages and attorney fees. *Toldy*, 2011 WL 4634154 at *2; *see Pettrey*, 241 F.R.D. at 284; *Carter*, 2010 WL 908464 at *2; *see also*, *e.g.*, *Glover v. Std. Fed. Bank*, 283 F.3d 953, 965 (8th Cir. 2002). Here, individual inquiries would predominate, Plaintiffs have offered no means to manage the litigation, and Emery would be prejudiced in its ability to raise all defenses. Courts in this Circuit have repeatedly denied certification in cases very similar to this one, which involves thousands of individual loan transactions, many with no connection other than that the same mortgage broker and title company were used.

### C.     Rule 23(a) Commonality and Typicality Were Not Met

#### i.     Commonality

Plaintiffs have not providid the "rigorous analysis" of commonality necessary to support class certification. Although "any competently crafted class complaint literally raises common questions . . . . What matters to class certification is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349-50 (cleaned up).

Plaintiffs assert that common questions include "the existence of a referral agreement," "the actual referral of loans," and "the payment . . . of things of value in exchange for the referral of loans," but this is a list of the elements of a RESPA claim, not an explanation how such questions could be answered uniformly for each class member. Mot. at 20, Doc. 326, PageID 9566. In fact, none of these issues is common for the entire class. For whether a referral was made for each borrower, not every loan closed by Genuine Title was referred there—rather, some requested or chose Genuine Title on their own. Klopp Dep. 132:10-133:2, Doc. 307, PageID 7878; Mandelberg Dep. 140:15-21, 192:1-7, Doc. 304, PageID 7181, 7194. Additionally, Defendant has prepared a chart summarizing the substantial gaps in the payments relied on by Plaintiffs, when compared with the proposed class definition. *See* Ex. 23. Finally,

while Plaintiffs' class purports to cover every Emery loan closed by Genuine Title, Plaintiffs admit they only have evidence of wrongdoing for 13 out of 40 teams.  Neither do equitable tolling (addressed above) or damages qualify.  Damages will vary for each class member, since they paid different amounts for the closing services and will therefore have different recoveries. The "common questions" identified by Plaintiffs do not satisfy Rule 23.

> ### ii.  Typicality

Typicality is lacking where the class "encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members." *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009).

Plaintiffs spend little time explaining how the named Plaintiffs' claims are typical of the rest of the class.  In fact, Plaintiffs' claims are not typical since they received their loans from only two of the thirteen teams whose managers, Plaintiffs allege, had referral agreements with Genuine Title, and because loans from teams for which Plaintiffs admit they have no evidence are included in the class definition.  Indeed, Plaintiffs concede that "[t]he putative class ***will include*** individuals who were referred to Genuine Title, LLC by an Emery employee ***who did not receive*** cash, a split fee, a thing of value, or a kickback in any form in exchange for the referral." Ex. 20, Plfs. Supp. Resp. to Defs. 2nd Set of Interrogs., No. 15(d) (emphasis added). Since Plaintiffs' proposed class includes borrowers who do not have RESPA claims because no payment was made for the referral of their loans to Genuine Title, typicality is lacking.

## CONCLUSION

For the foregoing reasons, certification should be denied.

Dated:  May 25, 2017

Respectfully submitted,

/s/ Carolyn A. Taggart
Carolyn A. Taggart   (0027107)
PORTER WRIGHT MORRIS & ARTHUR LLP
250 East Fifth Street, Suite 2200

Cincinnati, Ohio  45202-5118
 (513) 369-4231 (telephone)
 (513) 421-0991 (facsimile)
ctaggart@porterwright.com

David M. Souders (Bar No. 015102)
Michael Y. Kieval (Bar No. 17966)
Jeffrey P. Blackwood (Bar No. 13429)
WEINER BRODSKY KIDER PC
1300 19th Street, NW, Fifth Floor
Washington, DC 20036
(202) 628-2000 (telephone)
(202) 628-2011 (facsimile)
souders@thewbkfirm.com
kieval@thewbkfirm.com
blackwood@thewbkfirm.com

*Attorneys for Defendant*
*Emery Federal Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on May 25, 2017 with the

Clerk of the United States District Court using the CM/ECF system, which will send notification

of such filing to all attorneys of record.

 */s/ Carolyn A. Taggart*
Carolyn A. Taggart